STATE of Missouri, Respondent,

v.

Michael WILLIAMS, Appellant.

Michael WILLIAMS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 59937, 61935.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 27, 1993.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael J. Runzi, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Michael Williams, appeals his conviction in the Circuit Court of the City of St. Louis, for first degree murder and

armed criminal action. For these crimes, appellant was sentenced as a prior and persistent offender to consecutive terms of life and fifteen years' imprisonment, respectively. Appellant also appeals the denial of his Rule 29.15 motion, following an evidentiary hearing. We affirm.

Appellant does not contest the sufficiency of the evidence. Therefore, only a brief review of the facts favorable to the verdict is necessary.

On the evening of November 30, 1989, Kevin Clark and Lisa Hughes were visiting the home of Linda Mitchell at 3942 Cottage Street. These three adults were in the kitchen using cocaine while Mitchell's children and some of their friends were playing in the living room. A young friend of Mitchell's children, Kevin Doll, knocked at the front door and came in. Doll went straight back to the kitchen and asked Clark if he had appellant's money.[1] Doll informed Clark that appellant was looking for him with a gun and intended to kill him. When none of the adults took the warning seriously, Doll went out into the living room with the other children.

About five minutes later, Doll answered a knock at the door. Appellant, armed with a shotgun slung over his shoulder, entered the house and proceeded down the hall to the kitchen. Mitchell met appellant in the hallway and asked appellant what he thought he was doing with a gun in her house. Appellant knocked her down and entered the kitchen, where Clark was standing. Appellant aimed at Clark and fired once, striking Clark in the lower abdominal and pelvic areas. Appellant then turned, walked out the front door, and got into Cheryl Caldwell's blue Skylark, which she was driving. As soon as Kevin Doll joined them, Caldwell drove away. Kevin Clark died of injuries inflicted by the shotgun blast.

Appellant fled outside the State, but was arrested in April of 1990 in Milwaukee, Wisconsin. He was indicted for the above crimes on August 23, 1990, and a substitute information in lieu of indictment was filed by the State on February 19, 1991, charging appellant as a prior and persistent offender pursuant to RSMo §§ 558.016, 557.036.4, and 558.019 (1989).

The case went to trial immediately thereafter, with testimony lasting until February 22, 1991. During the course of the trial, appellant's counsel requested leave to endorse Arnetta Bonds (appellant's girlfriend) and Georgia Williams (appellant's sister). The trial court denied the motion.

The jury returned verdicts of guilty on both counts on February 22, 1991. On March 14, 1991, the court sentenced appellant to consecutive terms of life without possibility of probation or parole on the murder count, and fifteen years' on the armed criminal action count.

Appellant filed a *pro se* motion for post-conviction relief on December 23, 1991, and an amended motion was filed by counsel on March 3, 1992. An evidentiary hearing was held on the motion on March 27, 1992, at which both excluded witnesses testified. The motion court concluded, *inter alia*, that the testimony of both witnesses, if called, would not have affected the verdict. The motion was therefore denied, and appellant brings this appeal.

For his first point, appellant contends the trial court erred by refusing to allow the late endorsement of defense witnesses Arnetta Bonds and Georgia Williams. We cannot agree.

■■■ Trial courts possess broad discretion in permitting the late endorsement of witnesses. *State v. Vaughn*, 782 S.W.2d 83, 84–85 (Mo.App., E.D.1989); *State v. Sweet*, 796 S.W.2d 607, 613 (Mo. banc 1990). A reviewing court will only reverse for an abuse of discretion resulting in fundamental unfairness. *State v. Harris*, 751 S.W.2d 131, 132 (Mo.App., E.D.1988). As a matter of law, no abuse of discretion exists when the court refuses to allow the late endorsement of a defense witness whose testimony would have been cumulative, collateral, or if the late endorsement would

---

1. Appellant had loaned Kevin Clark money about a week earlier to procure drugs, and appellant had received neither the drugs nor the money in return.

have unfairly surprised the State. *Vaughn*, 782 S.W.2d at 84–85.

In the case before us, the record reveals that the defense sought to endorse the two witnesses during the presentation of the State's case in chief. Arnetta Bonds' testimony, that Linda Mitchell threatened appellant she would "get him", is purely collateral. It has nothing to do with appellant's guilt or innocence, the central issue in the case. Moreover, Bonds would have been called only if Mitchell had denied threatening appellant. Refusing to allow her testimony was no abuse of the court's discretion.

Also during the State's case in chief, appellant sought to endorse Georgia Williams, who would have testified appellant phoned her the night of the murder to say, "I don't know what's going on. I don't know why they are doing this." Defense counsel wanted this witness' testimony in the record in case appellant decided to testify. However, appellant never took the stand and this matter never arose at trial. Given the extremely dubious relevancy and the self-serving nature of the alleged utterance, we find no prejudice could possibly have resulted from the exclusion of this witness. Point denied.

For his second point, appellant alleges the trial court erred by overruling his hearsay objection to the testimony of State's witness Linda Mitchell. Specifically, appellant objected to Mitchell's statement that she heard Kevin Doll say appellant was looking for the victim, and that appellant had his shotgun with him. The admission of the above testimony was surely error, but improper admission of evidence requires reversal only when prejudice is demonstrated. *State v. Leisure*, 796 S.W.2d 875, 879 (Mo. banc 1990). To merit reversal, the evidence complained of must be so prejudicial that appellant was denied a fair trial. *State v. Girardier*, 801 S.W.2d 793, 796 (Mo.App., E.D.1991). Therefore, the erroneous admission of hearsay evidence is not prejudicial to the defense unless the evidence had a decisive effect on the jury or resulted in a miscarriage of justice. *Id.*

In the case before us, similar testimony was offered by Doll himself, when he took the stand. Kevin Doll's testimony reads as follows:

Q. [by the State] Alright. After you saw him [appellant] load up that shotgun what did you do?

A. Left.

Q. Did Lorenzo leave too?

A. Yes.

Q. Where did you go?

A. Riding my bike.

Q. Okay, where did you go?

A. That night?

Q. Sometime between five and six where did you go?

A. Just riding around.

Q. Did you ever go over to Linda's house?

A. Yes.

Q. And why did you go to Linda's house?

A. Looking for Lorenzo.

Q. And was he there?

A. No.

Q. So what did you do?

A. I went to—to the store up the street.

Q. Was he there?

A. No.

Q. Why did you go to the store?

A. 'Cause he probably went up to use the telephone.

Q. And he wasn't there so what did you do?

A. Went back to the house.

Q. Now either of those times when you went to the house did you see—did you see Kevin Clark?

A. Yes.

Q. Where was he?

A. In the kitchen.

Q. And what did you do or say?

A. I said, "Mike's looking for you for his money."

Q. Did you say anything else to him?

A. No.

Q. Did you say anything to him about—

MS. DITRAGLIA: Your Honor, I object. This is leading.

THE COURT: I haven't heard the question. Let her finish. And he is thirteen. At this point I'll overrule the objection.

Q. (By Ms. Medler) Did you hear him— Did you hear—Excuse me. Did you say anything to Kevin Clark about Michael having a shotgun?

A. No.

\*  \*  \*  \*  \*  \*

Q. (By Ms. Medler) [after strenuous objections] Could you have mentioned anything about that shotgun?

A. I probably had.

The above testimony is substantially consistent with, albeit less forceful than, Mitchell's testimony. A defendant cannot be prejudiced by hearsay reports of statements made by a witness who later appears in court and testifies consistently with the previously offered hearsay. *State v. Tyler*, 676 S.W.2d 922, 925 (Mo.App., E.D.1984).

■ Furthermore, we find the evidence at issue could not have had the required decisive effect on the jury when testimony was properly admitted graphically describing appellant shooting Clark in front of witnesses. Absent a degree of prejudice, strong evidence of guilt renders trial error harmless. *Leisure*, 796 S.W.2d at 880. Though it was error for the trial court to admit Mitchell's hearsay statements, we find the error harmless as the testimony did not prejudice appellant. Point denied.

■ Appellant next contends the trial court erred by admitting four photographs into evidence, three of the crime scene and one of the victim himself, as the photographs were cumulative and unduly gruesome. State's Exhibits 6 and 7 are photos of the crime scene with a paper silhouette placed in the position occupied by the victim's body; State's Exhibit 9 is the same scene without the paper silhouette; and State's Exhibit 13 is a picture of the victim's face along with a placard identifying the body, used by the City Medical Examiner's office.

■ The admission of photographic evidence is another area in which the trial court enjoys broad discretion. *State v.*

*Guinan*, 665 S.W.2d 325, 331 (Mo. banc 1984). A reviewing court will reverse only for an abuse of that discretion. *State v. Kincade*, 677 S.W.2d 361, 366 (Mo.App., E.D.1984). As long as a photograph has the potential to assist the jury's understanding of the testimony, or to corroborate that testimony, a reviewing court may not reverse on these grounds. *State v. Nash*, 648 S.W.2d 911, 913 (Mo.App., W.D. 1983). This court has established that photographs are likely to help the jury to better understand the testimony if they show the crime scene, the identity of the victim, the nature and extent of the crime, the nature and extent of the wounds, or the cause of death. *State v. Powell*, 793 S.W.2d 505, 508 (Mo.App., E.D.1990). The existence of oral testimony describing the scenes shown in the pictures is not reason enough to reject their admission into evidence. *Id.*

Exhibits 6, 7 and 9 show the scene of the crime and serve to corroborate witnesses' testimony in that regard. Exhibit 13 shows the victim's identity. Each of these are proper reasons for the admission of the photographs. Point denied.

■ For his next point, appellant alleges three counts of trial error during the State's closing argument. Specifically, appellant accuses the court of error in (a) overruling his objection to the State's "personal attack" on defense counsel, (b) denying appellant's motion for mistrial when the State referred to facts not in evidence, and (c) failing to declare a mistrial *sua sponte*, all during the State's closing argument. We shall address each assignment in turn, though we note at the outset that trial courts have broad discretion in controlling closing arguments. *State v. Vitale*, 801 S.W.2d 451, 457 (Mo.App., E.D. 1990). In addition, both trial and appellate courts accord counsel wide latitude in their closings. *Id.* To find an abuse of discretion, a reviewing court must find the prosecutor's statements to be clearly unwarranted. *Id.*

A glimpse of the record is sufficient to dispose of the "personal attack" allegation. The State argued as follows:

Look at little—little Dontanette, the little seven-year-old. Do you think she was lying to you. I guess you could say, "Well maybe she was coached. Maybe somebody told her what to say," but look at when she said what she said. Very first thing, when did she say it. First she said it to Detective Nickerson right after the shooting, right after it happened. Nobody had a chance to coach her.... if she had said anything in this courtroom that she did not say right then to Detective Nickerson you can bet that Ms. DiTraglia would have pointed it out for you, ...

Pointing out inconsistencies and flaws in the State's case is defense counsel's job. It is not a personal attack to inform the jury of this fact. Furthermore, the State may draw an adverse inference from defense counsel's failure to procure evidence which one could reasonably expect to be in the defendant's favor. *State v. Perry*, 820 S.W.2d 570, 574 (Mo.App., E.D.1991). Point denied.

■ Addressing appellant's next sub-point, it is true that the State referred to matters not in evidence during closing argument. The prosecutor referred to Cheryl Caldwell's statement that she had heard her son say appellant left the Mitchell house with the murder weapon. The statement was excluded as hearsay. When the prosecutor referred to this statement in closing argument, defense counsel objected, and the trial court sustained the objection. Defense counsel then asked for a mistrial, which the court denied.

A motion for mistrial lies within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of that discretion. *State v. Rhodes*, 829 S.W.2d 41, 43 (Mo.App., E.D.1992). Mistrials are drastic remedies to be used only when prejudice to the defendant can be removed in no other way. *Id.* Moreover, claims of improper argument should not form the basis for reversal unless the comment had a decisive affect on the jury's determination. *State v. Joles*, 755 S.W.2d 622, 624 (Mo.App., E.D.1988).

The jury heard firsthand accounts of a very violent, gory murder. An obscure reference to a collateral matter, though erroneous, can hardly have had the required effect. Given the trial court's broad discretion and the superior vantage point of the trial judge in weighing prejudice, *State v. Wren*, 643 S.W.2d 800, 802 (Mo.1983), we find the court's admonishment of the prosecutor was sufficient to correct the error. Point denied.

■ Appellant next alleges plain error in the trial court's failure to declare a mistrial *sua sponte* after the State referred to crime in the community and the need for strict law enforcement. The prosecutor argued:

You know the violence, the brutality and the senseless killings that that kind of drug climate engenders. You have a chance to try to stop it. One of the ways that we can judge a society is by the value that they put on human life, and one of the ways you look at that is you see what happens to somebody who takes a human life. Do you care more that the victim is rich and famous or do we say every life means something to us, even Kevin Clark's. Those who would take a life must pay the consequences, and that is what I ask you to do now. I ask you to send a message to this man here and to everyone like him you can't do that in St. Louis, not in our city you can't do that.

Similar arguments have been allowed by this court. The above argument fails to qualify as a manifest injustice, and appellant's conviction is hardly a miscarriage of justice. Moreover, the substance of the State's argument is plainly allowable. *See Kenley v. State*, 759 S.W.2d 340, 354 (Mo. App., S.D.1988). Point denied.

For his next point on appeal, appellant finds trial court error in failing to strike Venireperson Bruce Lippmann for cause. Appellant objected to Lippmann's inclusion on the panel because he is a doctor and did not think he could completely disregard his own medical training when it came to understanding, not interpreting, the testimony. On further examination, to correct any

misapprehension, Lippmann told the court he felt sure he could keep from second-guessing medical experts in the case.

▉ The qualification and seating of potential jurors is, again, an area of great discretion. *State v. Six*, 805 S.W.2d 159, 165 (Mo. banc 1991). The trial judge enjoys a better vantage point than an appellate court to judge the qualifications and sincerity of potential jurors. *State v. Leisure*, 796 S.W.2d at 880. Therefore, any doubts should be resolved in favor of the trial court. *Id.*

▉ The test for qualification of a potential juror is not whether some prior experience might enter the person's mind, but whether that prior experience will yield and the juror will determine the issues according to the law. *State v. Feltrop*, 803 S.W.2d 1, 8 (Mo. banc 1991). Taking into consideration the trial court's broad discretion, as well as Venireperson Lippmann's assurances, we find no error. Point denied.

Appellant next argues the trial court erred by allowing the State to define reasonable doubt during *voir dire*. We disagree.

It is elementary that, although a prosecutor may discuss the concept of reasonable doubt with the jury, he may not attempt to define it. *State v. Williams*, 659 S.W.2d 778, 781 (Mo. banc 1983). While discussion of reasonable doubt is not encouraged, there is no error unless counsel attempts to substitute his own definition for the correct one. *Id.* at 782. We have reviewed the transcript, especially the portion appellant complains of, and cannot find wherein the prosecutor offered any definition of reasonable doubt at all. Furthermore, the standard he discussed with the jury was correct in all respects. Point denied.

▉ For his next point, appellant mistakenly claims the court erred by defining "beyond a reasonable doubt" as "firmly convinced of the defendant's guilt." This point has been addressed and affirmed by every Missouri court. Point denied.

▉ Appellant's last two claims concern appellant's Rule 29.15 motion. The first of these two deals with ineffective assistance of counsel, as appellant claims his attorney failed to timely endorse Arnetta Bonds and Georgia Williams, (see point one), and call them as witnesses. We cannot agree that appellant's counsel was ineffective. Our review of a postconviction relief motion is limited to a determination of whether the findings of fact and conclusions of law of the motion court are clearly erroneous. Rule 29.15(j); *Antwine v. State*, 791 S.W.2d 403, 406 (Mo. banc 1990). Findings and conclusions are clearly erroneous only if a review of the entire record leaves the appellate court with the firm impression a mistake has been made. *State v. Vinson*, 800 S.W.2d 444, 448 (Mo. banc 1990). To prevail, a movant must establish (1) that his attorney's performance was deficient, and (2) that this deficient performance prejudiced his defense. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). We note that a decision not to call a witness is a matter of trial strategy which is virtually unchallengeable. *Bevly v. State*, 778 S.W.2d 297, 299 (Mo.App., E.D.1989).

▉ Turning to the facts before us, appellant's counsel testified at appellant's evidentiary hearing that, as a matter of trial strategy, she would not have called either witness. Counsel further testified Bonds had threatened appellant less than a week before the shooting, and that as an experienced attorney, she found both women's testimony unbelievable. The motion court, in its findings and conclusions, concurred with trial counsel. An attorney's deliberate failure to call a witness whom the attorney fears might hurt her client's case is a proper strategic and tactical decision that cannot constitute ineffective assistance of counsel. *Rodden v. State*, 795 S.W.2d 393, 396 (Mo. banc 1990). Point denied.

▉ For his last point, appellant urges ineffective assistance of counsel because counsel allegedly refused to allow him to testify despite his wish to do so. He alleges counsel failed to inform him of his absolute right to testify. Caselaw informs us that counsel's advice to defendant regard-

ing whether he should testify is a matter of trial strategy. *State v. Gray,* 812 S.W.2d 935, 940 (Mo.App., S.D.1991). Barring exceptional circumstances, such a claim is not a ground for relief. *Id.*

At appellant's evidentiary hearing, the motion court entered the following finding:

The Court totally and completely disbelieves the testimony of Movant when he says he was not aware of his right to testify, and completely believes the testimony of Attorney Caterina DiTraglia when she stated that she told him, "You can testify or not testify," and in reply he said, "Okay, I won't testify."

The Court finds that Movant was fully aware he had a right to testify and merely followed his counsel's advise (sic) and declined to do so.

Due to the motion court's superior ability to assess credibility of the testimony, we cannot say the court clearly erred by denying appellant's postconviction relief claim. Point denied.

The judgments of the circuit court and the motion court are hereby affirmed in their entirety.

SMITH and STEPHAN, JJ., concur.