STATE of Missouri, Plaintiff–
Respondent,

v.

Donald R. SIMPSON, Defendant–
Appellant,

and

Donald R. SIMPSON, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 19043, 19937.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 28, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 20, 1995.

Application to Transfer Denied
Nov. 21, 1995.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Judge.

Donald R. Simpson (defendant) was convicted, following a jury trial, of murder in the first degree. § 565.020.[1] He was sentenced to life imprisonment without eligibility for probation or parole. Defendant thereafter filed a motion for post-conviction relief pursuant to Rule 29.15. It was denied following an evidentiary hearing.

Defendant appeals the judgment of conviction in his criminal case (No. 19043) and the order denying his Rule 29.15 motion (No. 19937). The appeals were consolidated as required by Rule 29.15(*l*). The judgment in the criminal case and the order denying the Rule 29.15 motion are affirmed.

J.D. Masters lived in an apartment across the street from John Katura's mother's residence in Joplin, Missouri. Katura and his girlfriend, Angela Kirk, lived with Katura's mother in July 1989.

Defendant was acquainted with John Katura. In April 1989, he moved into the house occupied by Katura, Ms. Kirk and Katura's mother. He became acquainted with Masters and in June 1989, moved in with him. He stayed with Masters for about two days, then returned to the residence that Katura, Kirk and Katura's mother shared.

Katura was awaiting trial on a rape charge. His case was set for trial July 10, 1989. He was free on bond. Katura and defendant discussed Katura's jumping bond and leaving the area.

On July 6, 1989, defendant, Katura and Kirk were trying to get travel money so defendant and Katura could "work their way towards Mexico" and Kirk could return to her family's home in Arkansas. Masters

---

1. References to statutes are to RSMo 1986.

came to their residence. Masters was showing off a new pair of tennis shoes. He said he had gotten some extra money from his aunt.

After Masters left, defendant and Katura discussed trying to borrow money from him. They said if they could not borrow money from Masters they would "roll him." A short time later defendant and Katura left their residence. They said they were going to Masters' apartment. Ms. Kirk did not go with them.

About "30 minutes to an hour" later Katura returned. He was upset and crying. Defendant returned about a minute later carrying a paper bag and wearing Masters' shoes. He lifted a foot and said Masters did not need the shoes any more. He removed a pair of sunglasses that Ms. Kirk had previously seen Masters wearing and gave the sunglasses to Katura.

Katura said defendant had killed Masters. Defendant told Katura he knew he had done it; to be a man and quit whining.

Angela Kirk testified that defendant said he had a fight with Masters; that he choked Masters. She stated that defendant said Masters cried and begged for his life while defendant choked him with a towel. Ms. Kirk was asked the following questions and gave the following answers:

Q. Did he say where he had put the towel?

A. Around his neck.

Q. Around J.D.'s neck?

A. Yes.

Defendant and Katura discussed what to do with the body. They decided to put it in a garage behind the apartment building where Masters lived. They left the residence for about 20 minutes. When they returned, Katura told Ms. Kirk he would see that she got home. The three of them walked to a bus station about three blocks away. Ms. Kirk had $25 or $30. Katura gave her the additional money needed to buy a ticket to Forrest City, Arkansas. While waiting for the bus to arrive, defendant warned her to keep quiet about what had happened or he would come after her and then get her family.

Masters' aunt, Sally Collins, saw Masters on July 6. She made doctor appointments for him. The appointments were for July 11 and July 12. Ms. Collins tried to call Masters each day between July 7 and July 12. No one answered his telephone. On July 13, Ms. Collins went to Masters' apartment and looked through the mail slot in the front door. She saw that Masters had not been picking up his mail. She went to the police department and reported Masters missing.

On July 19, Ms. Collins and Gary Caylor were cleaning out Masters' apartment. Caylor noticed a strong odor. He went to the garage behind the apartment and discovered Masters' body. A towel was twisted and wrapped around Masters' neck. There were no shoes on his body. The body was badly decomposed. Identification was made through comparisons with surgical and dental records.

Defendant raises three points on appeal. Points I and II are directed to the appeal in his criminal case, No. 19043. Point III is directed to the appeal of the order denying his Rule 29.15 motion, No. 19937.

### No. 19043

Defendant contends the trial court erred in admitting two exhibits in evidence. Point I is directed to the admission in evidence of State's Exhibit No. 11, a photograph of Masters' decomposed body. Point II is directed to the admission in evidence of State's Exhibit No. 36, a record of Masters' telephone service in June and July 1989.

■ Point I contends the trial court erred in admitting State's Exhibit No. 11 in evidence for the reason that any probative value "was greatly outweighed by its highly prejudicial and inflammatory effect on the jury." It asserts "that State's Exhibit 11 was an extremely gruesome close-up view of the de-

cedent, depicting the body's deteriorated, almost skeletal, insect-infested condition at the time it was discovered."

Defendant points out that State's Exhibit No. 29 was admitted in evidence; that it was also a photograph of the body taken from a location farther away than the location from which State's Exhibit No. 11 was taken. Defendant contends that State's Exhibit No. 29 was sufficient to corroborate testimony concerning the scene where the body was discovered; that admitting in evidence and showing State's Exhibit No. 11 to the jury inflamed the passions and prejudices of the jury without probative value.

■ "It is within the discretion of the trial court to determine whether potentially prejudicial or inflammatory evidence should be admitted, and relevancy is the principal criterion." *State v. Wood,* 596 S.W.2d 394, 403 (Mo. banc), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980). Even though they are gruesome, photographs that enable the jury to better understand the testimony and aid in establishing any element in the state's case are admissible. *State v. Clements,* 849 S.W.2d 640, 643 (Mo. App.1993).

Angela Kirk testified that defendant put a towel around defendant's neck and choked him. State's Exhibit No. 11 is a 3½–inch by 5–inch color photograph. It depicts the corpse lying face down in the garage where it was discovered. The top of the head is the part of the anatomy nearest the camera. The corpse is clad in jeans and a shirt, the bottom of which is pulled up around the shoulders and neck. There also appears to be other material bunched about the neck. There was evidence that the other material was a towel.

State's Exhibit No. 29 is also a 3½–inch by 5–inch color photograph that depicts the corpse lying face down in the garage. It was taken from the same direction as State's Exhibit No. 11, but from a slightly greater distance. The material that the state identi-

fied as the towel around the neck of the corpse is not separately discernable from the shirt in State's Exhibit No. 29.

The state offered State's Exhibit No. 11 in evidence to show the jury that a towel was found around the corpse's neck. This court holds that to be a legitimate purpose; that State's Exhibit No. 11 was properly admitted to corroborate that the deceased was choked to death with a towel; that the exhibit aided the state in establishing the cause of death. There was no abuse of discretion by the trial court in admitting State's Exhibit No. 11 in evidence. Point I is denied.

■ Point II alleges the trial court erred in admitting State's Exhibit No. 36, a record of telephone service to the victim's residence, over the objection of defendant. State's Exhibit No. 36 consists of copies of telephone company microfilm records.

An area manager for Southwestern Bell Telephone Co., Jeffrey Glen Leeka, testified that his duties include being custodian of the records of the company; that he was familiar with the mode of preparation of the records. He examined State's Exhibit No. 36 and testified that they were records made in the ordinary course of his company's business at or near the time of the events depicted on the exhibit; that they were records of telephone No. 624–5923, the number of J.D. Masters. Mr. Leeka stated that the records reflected telephone charges to Mr. Masters' number for June 1989, and July 1989. The exhibit included an itemization of long distance calls from July 4 through July 6. The last long distance call that was recorded occurred July 6 at 5:12 p.m.

Defendant's trial attorney objected to the admission of State's Exhibit No. 36 on the basis of hearsay. He contended the business record exception was not applicable because the originals had been destroyed and no one could testify as to the authenticity of the records represented by the microfilm copy that was offered in evidence.[2] The trial court overruled the objection. State's Exhibit No. 36 was admitted.

Section 490.680 states:

2. Defendant's trial attorney stated that he re-

ceived a letter from Southwestern Bell Telephone

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Defendant contends there was no evidence of the mode of preparation of the exhibit; that, therefore, it was not admissible. He argues that Mr. Leeka's testimony that he was familiar with the mode of preparation of the record was not sufficient.

Defendant argues that he was prejudiced by the admission of the exhibit in evidence because the state's evidence was that J.D. Masters was killed on July 6, 1989, and the prosecuting attorney stated in closing argument:

> Don't forget the telephone records. Gosh, you know, you look at these records—I don't remember the exact time, but I do know the exact day, July 6th about—here it is. July 6th, 5:12 p.m., there's a phone call made from the victim's house. Coincidentally enough, just about the time that Angela Head [3] would suggest that they were there. 5:12 p.m., there's a call to Amarillo, Texas. Who lives in Amarillo, Texas? Why are we calling Amarillo, Texas? ... [W]e do coincidentally know one person in Amarillo, we know [defendant's] stepfather. Who do you think was called from the victim's own phone that night? Smoke and gun. I don't know, pretty doggone close, isn't it? One person we know in Amarillo. There it is, black and white. You've seen it, Exhibit No. 36.

Co. dated March 17, 1993, describing the procedure the company follows in microfilming customer service records and, thereafter, destroying those records. He explained that the records regarding the victim's telephone service had been destroyed; that "18 months after the fact, they regularly destroy all of their records and

Defendant, in his pursuit of Point II, disregards the fact that prior to the admission of State's Exhibit No. 36, Masters' aunt, Sally Collins, testified that she found Masters' telephone bills with the mail that had accumulated at the apartment after his death. Ms. Collins testified, without objection, that the telephone bill for July 4 to July 6, 1989, showed the last call made from Masters' telephone was made on July 6 at 5:12 p.m. to Amarillo, Texas. The evidence provided by the admission of State's Exhibit No. 36 was, therefore, cumulative with respect to the issue raised by Point II.

This court need not, and does not, determine whether a proper foundation was laid to permit admission of State's Exhibit No. 36 as a business record exception to the rule excluding hearsay evidence. If the admission of State's Exhibit No. 36 was error, since it provided only cumulative evidence, the error was harmless. *State v. Rezabek,* 584 S.W.2d 430, 435 (Mo.App.1979). *See also, State v. McClendon,* 895 S.W.2d 249, 252 (Mo.App. 1995); *State v. Lawson,* 876 S.W.2d 770, 780 (Mo.App.1994); *State v. Alexander,* 875 S.W.2d 924, 931 (Mo.App.1994); *State v. Galvan,* 798 S.W.2d 185, 190 (Mo.App.1990); *State v. Johnson,* 603 S.W.2d 683, 685 (Mo. App.1980). Harmless error is disregarded. Rule 29.12(a). Point II is denied.

### No. 19937

■ Point III alleges the motion court erred in denying defendant's Rule 29.15 motion that asserted he received ineffective assistance of trial counsel. Defendant contends his trial counsel was deficient in encouraging him not to testify at trial without ensuring he "understood all of the circumstances surrounding his decision," and in "[f]ailing to investigate the telephone call to Amarillo, Texas, ... which the state inferred was made to [defendant's] stepfather in

they are unable to provide me the information regarding the telephone number in question, 624–5923, which is that of J.D. Masters."

3. Angela Kirk testified that she had previously been married; that her married name was Head.

Amarillo." Defendant contends that an investigation regarding the telephone number would have disclosed that the telephone number was not his stepfather's telephone number; that this information "would have prevented the state from arguing [defendant] was in Masters' apartment at the time the state argued Masters was killed."

■■■■ *State v. Parker*, 886 S.W.2d 908 (Mo. banc 1994), states the requirements for proving ineffective assistance of counsel:

> To prove ineffective assistance, the defendant must show that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and that the defendant was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Wise*, 879 S.W.2d 494, 524 (Mo. banc 1994). To prove prejudice, the defendant must show a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Shurn*, 866 S.W.2d 447, 468 (Mo. banc 1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). Trial strategy is not a ground for ineffective assistance of counsel. *Id.*

*Id.* at 929.

One of the witnesses at the evidentiary hearing in defendant's Rule 29.15 proceeding was Larry Gray. Mr. Gray had been married to defendant's mother until 1980 or 1981. He was asked about his relationship with defendant. Mr. Gray answered, "I was the only father he knew. He was in diapers when his mother and I got married." Mr. Gray said defendant "would have been 12 or 13, maybe 14" when he and defendant's mother divorced. Larry Gray had no contact with defendant from 1980 or 1981 until the latter part of 1989. Mr. Gray was living in . Amarillo, Texas.

Mr. Gray did not recall his company telephone number in Amarillo or his home number there—he moved from Amarillo to Moro, Arkansas, between 1989 and the date of the Rule 29.15 hearing. He did not identify the Amarillo number that was on the victim's telephone bill.

The motion court concluded:

> Trial counsel is alleged to be ineffective in that he … failed to investigate a phone call to Amarillo, Texas, and failed to investigate other phone calls made from [the victim's] telephone. There is no evidence as to what these investigations would have revealed. To demonstrate ineffectiveness of counsel in failing to investigate or present evidence, a movant is required to show what the evidence would have been. *State v. Twenter*, 818 S.W.2d 628, 636 (Mo. banc 1991). Absent such evidence, prejudice is not demonstrated. *State v. Ramsey*, 864 S.W.2d 320, 338 (Mo. banc 1993).

The motion court further found:

> Different criminal defense attorneys may properly utilize different trial strategy and defend a client in different ways. Because [defendant's] present counsel would have tried the case in a different way or in a different manner or have use [sic] a different strategy does not establish ineffective assistance of counsel. *Letterman–Matney v. State*, 679 S.W.2d 414 (Mo.App. S.D.1984); *Williamson v. State*, 628 S.W.[2d] 895 (Mo.App.W.D.1981); *Strickland v. Washington*, supra.

It concluded, regarding defendant's trial counsel encouraging him not to testify:

> [Defendant] now complains that [trial counsel] encouraged him not to testify in the first phase of the trial. The records support the fact that this was a decision that was discussed by [defendant] and [trial counsel] numerous times before trial and before the defense rested its case. The reasons why defense counsel advised against [defendant] taking the stand are well-reasoned and expressly stated. The ultimate choice was left to [defendant] and he chose not to testify. This was sound trial strategy, and the [motion] Court does not convict trial counsel of being ineffective for giving the advice he gave.

Trial counsel's advice to a defendant regarding whether he should testify is a matter of trial strategy. *State v. Williams,* 853 S.W.2d 371, 377–78 (Mo.App.1993). "Barring exceptional circumstances, such a claim is not a ground for relief." *Id.* at 378.

The motion court's determination that defendant failed to prove that he received ineffective assistance of counsel is not clearly erroneous. Point III is denied.

### Dispositions

The judgment of conviction in No. 19043 is affirmed. The order denying defendant's Rule 29.15 motion in No. 19937 is affirmed.

SHRUM, C.J., and PREWITT, P.J., concur.