**STATE of Missouri, Plaintiff–Respondent,**

v.

**John WESTON, Defendant–Appellant,**

and

**John WESTON, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**
**Nos. 19121, 19985.**

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 6, 1995.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David G. Brown, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Judge.

John R. Weston, Jr., (defendant) was convicted following a jury trial of murder in the

second degree. § 565.021.1(1)[1]. He was sentenced to imprisonment for life. § 558.011.1(1). Following his conviction defendant filed a Rule 29.15 motion that was denied after an evidentiary hearing.

Defendant appeals the judgment of conviction in his criminal case (No. 19121) and the order denying his Rule 29.15 motion (No. 19985). The appeals were consolidated. *See* Rule 29.15(*l*). This court affirms both the judgment of conviction and the order denying the Rule 29.15 motion.

### No. 19121

Janice Owens Hernandez worked as a waitress at Crossroads Lounge in Poplar Bluff, Missouri. Her brother took her to work May 6, 1988. That evening at about 10:00 p.m., Ms. Hernandez locked the door to the lounge. There was only one customer in the lounge, Jerry Moore. After locking the door, Ms. Hernandez and Mr. Moore drank together. Mr. Moore explained:

> She had locked the doors because there was no customers and she had mentioned having to hitchhike home to Greenville and I kept hanging around because I felt, well, you know, I didn't want to just leave her with no ride. I thought I would give her a ride. I didn't tell her that I would, I just thought if something happened and she didn't have a ride that I would take her home.

Around midnight or 1:00 a.m. defendant knocked on the door at Crossroads Lounge. Ms. Hernandez let him inside. Mr. Moore, Ms. Hernandez and defendant played pool, listened to music and drank beer until about 2:00 or 2:30 a.m. They left the lounge at the same time, about 2:30 a.m. Ms. Hernandez told Mr. Moore she was going to ride home with defendant. He saw the two of them leave the parking lot together in a car. Defendant was driving. Ms. Hernandez did not come home the morning of May 7. The next day her brother reported her missing.

At 6:45 a.m., May 7, defendant was at the residence of Linda Byrd and her family. The Byrd residence was alongside Highway E in Wayne County in an area known as "pipe line." He knocked at the door. Ms. Byrd answered. Defendant told her he was having car trouble. Ms. Byrd woke up her son, Roger Green, and sent him to help defendant.

Defendant's car was about five miles from the Byrd residence. The car was about two miles off Highway E on an access road leading to a pipe line that runs through the area. Roger Green took defendant to his car and helped him start it.

On May 31, 1988, Ms. Hernandez's body was found by a logger in the pipe line area of Wayne County about 450 feet from where defendant's car was stalled the morning of May 7. The body was uphill from the pipe line access road that runs from Highway E. It was at a location approximately one-half mile from Ms. Hernandez's residence.

The body was decomposed—it consisted primarily of skeletal remains—with various body parts missing. The body parts that were found were scattered over an area 200 feet long. A piece of thick electrical wire was wrapped around the left wrist with a loop at the other end that would permit both hands to be tied together. The right hand was not found. Clothing, shoes and rings were found at the scene that were later identified as belonging to Ms. Hernandez.

Defendant's car had been searched at Troop E Headquarters of the Missouri State Highway Patrol on May 18, 1988. Lt. Jim Keathley of the patrol was asked what was noted in the examination of the car. He answered, "After putting the vehicle up on a lift we looked under the vehicle and I removed several pieces of what appeared to be possible tissue and several lifts of what appeared to be blood on the vehicle and also on the passenger's side inside windshield there were some shoe prints left on the inside of the window." The shoe prints matched the shoes that were later found at the site where the body parts were discovered.

Jerry Moore told an investigator for the Butler County Sheriff's Department,[2] Officer Bill Heaton, that Ms. Hernandez left the

---

1. References to statutes are to RSMo 1986.

2. The Crossroads Lounge is in Butler County.

Crossroads Lounge the morning of her disappearance with someone named John. Officer Heaton learned of defendant's identity from Ms. Hernandez's brother and requested the Wayne County Sheriff to arrange for him to interview defendant.

On May 17 a Wayne County deputy sheriff brought defendant to Butler County to be interviewed. They arrived at the sheriff's office about 12:30 p.m. where he was questioned by Officer Heaton.

Initially, defendant told three different stories. He first denied seeing Ms. Hernandez on May 7. Later, he admitted being at the Crossroads Lounge in the early morning hours of May 7 and leaving Ms. Hernandez. Defendant's second story was that he and Ms. Hernandez stopped for gas at a 7–11 Store; that Ms. Hernandez met three girls there and left with them. Defendant's third story was that he and Ms. Hernandez left the lounge together, drank a few beers and got into an argument. He said he and Ms. Hernandez smacked one another; that he woke up the next morning on a gravel road and did not know where she was.

Defendant was taken to Highway Patrol Troop E Headquarters the evening of May 17. He was questioned further by Highway Patrol Sergeant Donnie Smith. He told Sgt. Smith that he had gone to the Crossroads Lounge to pick up Ms. Hernandez after work and take her to her residence. He said they got into an argument on the way home; that he stopped the car and the two of them got out. Defendant told Sgt. Smith that Ms. Hernandez hit him in the chest; that he pushed her and she fell down. He claimed that she got up and walked into the woods. He said that was the last time he saw her.

Later the same evening, defendant told Sgt. Smith that the previous statement he made to him was a lie. He said he picked Ms. Hernandez up at the Crossroads Lounge and drove around with her. He said they got into an argument while they were still near the lounge and got out of the car. He said he pushed her away and she fell over an embankment and hit her head. He said he knew she was dead; that he panicked, got in his car and drove home.

At another time during defendant's interrogation by Sgt. Smith, he stated he had been with Ms. Hernandez during the early morning hours of May 7; that they got into an argument and he threw her off a bridge at Fisk, Missouri. A search of that area failed to turn up any evidence to corroborate defendant's story.

On the morning of May 18, defendant gave a written statement to Officer Heaton. In it defendant stated there had been a struggle during which Ms. Hernandez smacked him. He said he smacked her and she fell over an embankment.

The jury also heard testimony from Robert Leon Schlater, an inmate at the Missouri Department of Corrections who had been in the Wayne County jail in September 1988, when defendant was there. Mr. Schlater said defendant discussed the death of Janice Owens Hernandez. Mr. Schlater told the jury:

> He told me on the night that this incident happened that he picked up the girl and they was out riding around and he took her out to a place called the pipe line, where the body was supposed to have been found. Anyway, he said they got into an argument and they had a fight and he was on top of her and had her by the hair of the head and he was beating her head against the ground and there was a rock underneath her head and at one time when he pushed her head down he kind of felt her body went lifeless and at that time he drug her off by the feet and got in his car and spin in his car to cover his tracks and left.

Another witness, Darrell Markham, testified that he and defendant had been at the Greenville Eagles Club in November 1988. He had been arguing and fighting with defendant. Mr. Markham was asked, "Did [defendant] say anything else with regard to threatening you the same way he had a girl or anything?" He answered, "That's—He said he would do me just like he done the girl."

■ Defendant's first allegation of error is directed to the denial of his motions for judgment of acquittal at the close of the

state's case and at the close of all the evidence. He contends "the state's evidence was insufficient to convince a rational trier of fact of guilt beyond a reasonable doubt, since the evidence failed to prove that Janice Hernandez died as the result of a homicide as opposed to an accident without reference to [defendant's] statements." He contends the corpus delicti of the offense of murder in the second degree was not established.

■ Defendant's first point is based on the principle that in order to support a conviction, the existence of the crime charged must be proven by evidence independent of a mere confession of guilt. *See State v. Howard*, 738 S.W.2d 500, 504 (Mo.App.1987). However, "[i]f there is evidence of corroborating circumstances which tend to prove the corpus delicti and correspond with circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the corpus delicti is sufficiently proved in a given case." *State v. Skibiski*, 245 Mo. 459, 150 S.W. 1038, 1039 (1912).

"[F]ull proof of the corpus delicti independent of the defendant's extrajudicial confessions is not required." *State v. McQuinn*, 361 Mo. 631, 235 S.W.2d 396, 397 (1951). "The corpus delicti in a homicide case consists of (1) a person's death, and (2) the criminal agency of another." *State v. Vincent*, 785 S.W.2d 805, 810 (Mo.App.1990).

There is an abundance of evidence of corroborating circumstances that tends to prove corpus delicti and corresponds to circumstances related in defendant's various confessions. Robert Schlater told the jury of defendant's statement that he and Ms. Hernandez were riding around and went to "a place called the pipe line." Ms. Hernandez's body was found in the pipe line area. Defendant was there, with his car, the morning of May 7. Ms. Hernandez was not with him at the time he obtained Roger Green's assistance to start his car.

An electrical wire was around one wrist of the body with a loop in which the other wrist could be tied. The presence of a restraint suggests the disappearance and death of Ms. Hernandez was attributable to another's criminal act.

When defendant experienced car trouble the morning of May 7, he was about one-half mile from the residence Ms. Hernandez shared with other family members. However, he did not go there for assistance. Rather, he walked five miles in another direction to the Byrd residence. It is inferable that defendant wished to avoid members of defendant's family who expected her to return home that morning.

There was evidence that defendant stated he felt Ms. Hernandez's body go lifeless when he pushed her head against the ground; that he then drug her away by her feet. Ms. Hernandez's body was found approximately 450 feet away from the road where defendant's car had been the morning of May 7. There were shoe prints on the inside of defendant's car windshield that matched the shoes found near the body.

Defendant made statements that alluded to Ms. Hernandez striking her head on the ground or a rock as a result of his pushing her. There was medical evidence that a blow to the head could be fatal even though it produced no skull fracture.

After Ms. Hernandez's disappearance, defendant gave numerous conflicting exculpatory statements. "Exculpatory statements which are proven to be false evidence a consciousness of guilt and bear directly on the issue of guilt or innocence." *State v. Schwartz*, 899 S.W.2d 140, 144 (Mo.App. 1995).

There was extensive evidence consistent with circumstances related by defendant's statements. In view of the corroborating evidence, defendant's statements were admissible to show that Janice Owens Hernandez's death was the product of a criminal act. The evidence was sufficient for a reasonable juror to conclude, beyond a reasonable doubt, that Ms. Hernandez's death was a homicide. Defendant's first point is denied.

Defendant's second allegation of error is directed to a statement made in the course of Lt. James Keathley's testimony. Lt. Keathley was asked if he had occasion to become involved in the investigation of the disappearance of Ms. Hernandez. He answered that

he had. He was asked, "And how did you become involved in that investigation?" He answered, "I became involved mainly during the time that the polograph [sic] test was ran on the defendant." Defendant's trial attorney objected to the question and requested a mistrial. The trial court denied the request.

■ Defendant's second point contends the trial court erred in denying the motion for mistrial because "evidence of polygraph examinations is inadmissible and the jury could have inferred from the reference that [defendant] had failed the polygraph test and was therefore guilty of the murder."

Defendant filed a motion in limine prior to trial to exclude evidence of a polygraph test. The motion was sustained. When Lt. Keathley referred to a polygraph test, defendant's trial attorney immediately objected and, following a lengthy record made outside the presence of the jury, requested mistrial.

■ Results of polygraph examinations are not admissible evidence. *State v. Biddle,* 599 S.W.2d 182, 191 (Mo. banc 1980). The fact that polygraph tests have or have not been taken is not admissible. *State v. Woods,* 639 S.W.2d 818, 820 (Mo.1982). However, inadvertent reference by a witness to a polygraph examination does not, standing alone, constitute prejudice that requires mistrial. *State v. Williams,* 654 S.W.2d 215, 218 (Mo.App.1983).

In denying defendant's request for mistrial, the trial judge noted, "I didn't see any reaction from the jury at the time it was mentioned." The trial court was in a better position to determine the effect of the statement on the jury than is this court. On the record before it, this court does not conclude that defendant was prejudiced. Defendant's second point is denied.

■ Defendant's third allegation of error contends the trial court committed plain error in admitting three photographs, State's Exhibits 3, 4 and 5, in evidence. Defendant claims "the photographs were cumulative, repetitious, gruesome, and unduly inflammatory"; "that any probative value the photographs may have had to shed light on any material issues was outweighed by their prejudicial effect."

After Lt. Keathley testified, the prosecuting attorney offered State's Exhibits 2 through 11 in evidence. The trial judge asked defendant's trial attorney with respect to State's Exhibits 3, 4 and 5, "Do you have objection to those, Mr. Dugan?" The attorney stated that he wished to ask Lt. Keathley additional questions, then added, "But, no, I don't have any objection to that." The judge responded, "Okay. Exhibits 3, 4 and 5, the photographs will be admitted."

This court addressed the same issue presented by this point in *State v. Zelinger,* 873 S.W.2d 656 (Mo.App.1994). The circumstances in *Zelinger* are strikingly similar to those in this case. Photographs of skeletal remains of a victim in a homicide were admitted in evidence without objection by defense counsel. This court observed that the question of admissibility of the exhibits had not been preserved for appellate review because it was not presented to the trial court by means of objection when the evidence was offered. *Id.* at 660. The court said:

> Defendant is cognizant of the fact that he did not preserve the question he now presents for appellate review. He asks, therefore, that the issue be reviewed for plain error. *See* Rule 30.20. However, the issue does not qualify for plain error review. At the time the photographs were offered in evidence, defendant's trial counsel acquiesced in their admission. He announced, "No objection, Your Honor."

*Id.*

*Zelinger* explains, citing *State v. Daly,* 798 S.W.2d 725, 729 (Mo.App.1990), that the rule in Missouri is that stating "no objection" when evidence is offered waives appellate review of the question of its admissibility. 873 S.W.2d at 660. *Zelinger* states, quoting from *State v. Scott,* 858 S.W.2d 282, 285 (Mo.App.1993), " 'As opposed to a simple failure to object, which may warrant plain error review, a statement by defendant's counsel that there is no objection to … a particular piece of evidence precludes a finding that the failure to object was negligent or inadvertent and renders that evidence admissible.' " 873

S.W.2d at 660.[3]

Defendant's third point is denied. The judgment of conviction in No. 19121 is affirmed.

*No. 19985*

■ Defendant claims he received ineffective assistance of counsel in the trial of the underlying criminal case. He contends in his fourth point that the motion court erred in denying his Rule 29.15 motion "in that trial counsel failed to object and preserve for appellate review that the trial court erred in admitting photographs denominated State's Exhibits 3, 4 and 5, crime scene photographs of the body of Janice Hernandez, despite that any probative value the photographs may have had to shed light on any material issues was outweighed by their prejudicial effect, as the photographs were cumulative, repetitious, gruesome, and unduly inflammatory."

State's Exhibits 3, 4 and 5 were not deposited with this court. Defendant, in a motion entitled "Motion to Remand for a New Trial" requests this court to "reverse his convictions [sic] and sentences [sic], and remand [the] case for a new trial." *See* n. 3, *supra.*

The record on appeal in No. 19121, of which the motion court took judicial notice, provides information with respect to what the missing pictures depict. Lt. Keathley took the pictures. He described the photographs. He described State's Exhibit 3 as "the photograph of a shoe and sometype [sic] of a, huh, main bone and it's lying on the ground." He stated that the photograph was taken at the place the body was discovered.

Lt. Keathley identified State's Exhibit 4 as "a photograph of a skull that was in the same general area as where the majority of the

body parts were found." He acknowledged that it was noted on a diagram he had prepared of the area that had been admitted in evidence.

State's Exhibit 5 was described as "a mummified hand with a piece of red wire wrapped around the wrist." Lt. Keathley testified that other small pieces of bone and material were found in the general area where the photographs were taken.

■ Loss of evidence by law enforcement or prosecuting officials is without justification. As with the case of destruction of evidence, it matters not that the loss was inadvertent. *See State v. Dunn,* 817 S.W.2d 241, 244 (Mo. banc 1991), *cert. denied,* 503 U.S. 992, 112 S.Ct. 1689, 118 L.Ed.2d 403 (1992), regarding destruction of evidence. However, as explained in *People v. Curry,* 165 Cal.App.3d 349, 211 Cal.Rptr. 590, 593 (Cal.App. 2 Dist.1985), the effect of the loss of a piece of evidence on an appeal depends on the circumstances of the case. In order to warrant reversal, it is incumbent on an appellant to demonstrate that the lost evidence possesses attributes of particular importance to the appeal or that there is a reasonable possibility that the outcome of the appeal would be different had the evidence not been lost. *Curry, supra, citing People v. Lee,* 38 Cal.App.3d 749, 757–59, 113 Cal.Rptr. 641 (1974).

In view of the descriptions Lt. Keathley provided of what the photographs depicted, this court concludes that their unavailability does not prevent it from adequately reviewing the issue presented by defendant's fourth point. Defendant has not shown there is a reasonable probability that the outcome of

---

**3.** There were no trial court exhibits deposited with this court with respect to appeals 19121 or 19985. Defendant filed a motion in which he states his counsel was advised "by the Office of the Attorney General" that State's Exhibits 3, 4 and 5 have been lost. Defendant's motion alleges that his appellate counsel could not review the photographs to determine whether to raise the issue of plain error of the admission of those exhibits in the appeal of the judgment of conviction in the criminal case and asserts that an issue of competency of trial counsel exists in the appeal of the post-conviction motion that requires the exhibits. He contends the judgment of con-

viction should be reversed and the case remanded for new trial because of the loss of the exhibits. The motion was taken with the case. Because the issue regarding the exhibits, defendant's third point, is not addressed on the merits in the direct appeal of defendant's criminal case, the lack of availability of the exhibits is not relevant in appeal No. 19121. *See State v. Williams,* 546 S.W.2d 533, 537 (Mo.App.1977). It is therefore, unnecessary to discuss or decide the motion with respect to No. 19121. The motion is addressed, with respect to No. 19985, *infra.*

this appeal would be different had the photographs not been lost. Defendant's motion to Remand for a New Trial is denied.

■ Defendant's fourth point asserts the motion court erred in denying his claim that he received ineffective assistance of counsel at his criminal trial due to his trial attorney's failure to object to State's Exhibits 3, 4 and 5. In reviewing a claim of ineffective assistance of counsel, "the focus is on (1) counsel's performance, and, (2) if that performance is deficient, whether prejudice resulted from counsel's breach of duty." *Driscoll v. State,* 767 S.W.2d 5, 7 (Mo. banc), *cert. denied,* 493 U.S. 874, 110 S.Ct. 210, 107 L.Ed.2d 163 (1989).

A trial court has broad discretion in determining the admissibility of photographs. *State v. Davis,* 877 S.W.2d 669, 677 (Mo.App. 1994). This court has, on two recent occasions, found no error in trial courts admitting photographs of skeletal remains in murder cases. *See State v. Simpson,* 908 S.W.2d 839, 841–42 (Mo.App.S.D.1995), and *State v. Zelinger, supra.*

■ The admission of State's Exhibits 3, 4 and 5 in evidence was not unlike the admissions in evidence of photographs in *Simpson* and *Zelinger.* An objection to the admission of the exhibits would not have been meritorious. Trial counsel is not deemed ineffective for failing to make a nonmeritorious objection. *State v. Pagano,* 882 S.W.2d 326, 337 (Mo.App.1994). Defendant's fourth point is denied. The order denying the Rule 29.15 motion should be affirmed.

### Disposition of Appeals

The judgment of conviction in No. 19121 is affirmed. The order denying defendant's Rule 29.15 motion in No. 19985 is affirmed.

PREWITT, P.J., and CROW, J., concur.