# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2387

_____

| | | |
|---|---|---|
| John Weston, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Dave Dormire, | * | District of Missouri. |
| | * | |
| Appellee. | * | |

_____

Submitted:  June 15, 2001

Filed:   November 30, 2001

_____

Before LOKEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
      BATAILLON, District Judge.[1]

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After a Missouri state court jury found John Weston guilty of second-degree murder, *see* Mo. Rev. Stat. § 565.021.1(1), the state trial court sentenced him to life in prison.  The state trial court also denied Mr. Weston's subsequent petition for post-conviction relief, *see* Mo. R. Crim. P. 29.15(a) and Mo. R. Crim. P. 29.15(m) (1997, historical notes).  A Missouri appellate court affirmed  Mr.  Weston's

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

conviction on his direct appeal and denied his petition for post-conviction relief. *See State v. Weston*, 912 S.W.2d 96 (Mo. Ct. App. 1995).

Mr. Weston petitioned for federal habeas corpus relief, *see* 28 U.S.C. § 2254, which the district court denied, and Mr. Weston appealed. We affirm the judgment of the district court.[2]

## I.

The elements of second-degree murder under Missouri law, as relevant to Mr. Weston's case, are that a person knowingly cause the death of another person, or that a person, with the purpose of causing serious physical injury to another person, cause the death of the other person. *See State v. Ellison*, 980 S.W.2d 97, 101 (Mo. Ct. App. 1998); *see also* Mo. Rev. Stat. § 565.021.1(1).

Mr. Weston first contends that the trial record contains insufficient evidence to support a conviction for second-degree murder under Missouri law. *See Jackson v. Virginia*, 443 U.S. 307, 319, 321, 324 (1979). Specifically, Mr. Weston argues that the state prosecutor offered no proof that the victim died as a result of murder rather than because of an accident, natural causes, or suicide. *See State v. Evans*, 992 S.W.2d 275, 284 (Mo. Ct. App. 1999) (*per curiam*). Mr. Weston further contends that, even if the victim was murdered, the proof was insufficient to allow a rational jury to decide, beyond a reasonable doubt, that it was Mr. Weston, and not someone else, who caused the victim's death.

We recount the facts adduced at trial, as found by the Missouri appellate court, *see Weston*, 912 S.W.2d at 98-99. (We see nothing in Mr. Weston's appellate brief

---

[2]The Honorable Jean C. Hamilton, Chief United States District Judge for the Eastern District of Missouri.

to this court that suggests that he disputes the factual summary that the Missouri appellate court rendered.)

There was testimony at trial that the victim, who was a waitress, left a bar with Mr. Weston late one evening; that early the following morning Mr. Weston sought assistance in starting his stalled car; and that, about three and a half weeks later, a timber worker found the skeletal remains of the victim approximately 450 feet from the site where Mr. Weston's car had stalled. *See id.* at 98.

There was additional testimony that various parts of the victim's body were scattered within 200 feet of her skeleton; that a piece of thick electrical wire was wrapped around one of her wrists; that, although her other hand could not be found, the wire contained a loop at its end of a size that would have allowed her hands to be tied together with the piece of wire; and that, from rings, clothes, and shoes at the site, the police confirmed the victim's identity. *See id.* Other testimony tended to show that, on the passenger's side of the inside windshield, Mr. Weston's car contained multiple shoe imprints matching the shoes found at the site of the victim's remains, plus what appeared to be pieces of human tissue and what appeared to be blood. *See id.*

According to testimony by police officers, Mr. Weston gave at least six different versions of the events of the relevant night. *See id.* at 99. Three of those versions included an account of an argument and a struggle between Mr. Weston and the victim; of those three versions, two also included a statement that the victim "fell over an embankment" during the struggle, *id.* In one account that Mr. Weston gave to the police, he stated that the victim had "hit her head" when she fell over the embankment and therefore, Mr. Weston stated, he "knew she was dead" and drove home in a panic, *id.*

A state prisoner testified at trial that he and Mr. Weston had shared a cell in a county jail and that Mr. Weston had said, during that time, that in the course of the struggle with the victim, "he was on top of her and had her by the hair of the head and ... was beating her head against the ground and there was a rock underneath her head and ... he kind of felt her body went lifeless and ... he drug her off by the feet," *id.* Finally, another witness testified that one night he and Mr. Weston were "arguing and fighting" and that Mr. Weston threatened the witness by saying that "he would do me just like he done the girl," *id.*

## II.

In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime. *See Jackson*, 443 U.S. at 319, 321, 324; *see also Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000), *cert. denied*, 121 S. Ct. 1625 (2001). We believe that the evidence was constitutionally sufficient in Mr. Weston's case.

With respect to whether the state prosecutor offered proof that the victim's death was not attributable to accident, natural causes, or suicide, both the district court and the Missouri appellate court held that the presence of the wire that was binding one of the victim's wrists, and containing a loop that would have allowed the victim's hands to be tied together, was sufficient evidence to allow a rational jury to conclude, beyond a reasonable doubt, that the victim was restrained at the time of her death and, therefore, did not die by accident, natural causes, or suicide. *See Weston v. Dormire*, No. 4:97CV794 at 7 (E.D. Mo. May 3, 2000), and *Weston*, 912 S.W.2d at 100. Such a restraint, we agree, makes it highly unlikely that the victim died from an accident, natural causes, or suicide, rather than from murder. In addition, we note that although the pathologist who performed the victim's autopsy testified that he was

-4-

unable to determine a cause of death, he also stated that he had never encountered such a restraint in the presence of death by natural causes or suicide.

On the issue of whether the state prosecutor offered proof that it was Mr. Weston, rather than someone else, who caused the victim's death, both the district court and the Missouri appellate court considered significant the state prisoner's testimony that Mr. Weston described the events of the relevant night as including "riding around ... to a place called the pipe line," *Weston*, 912 S.W.2d at 99, in conjunction with testimony that Mr. Weston asked for help with his stalled car from a friend who lived five miles away from the car, *see id.* at 98, 100, rather than seeking help at the victim's house, which was only a half-mile from the car, *see Weston*, No. 4:97CV794 at 7-8, and *Weston*, 912 S.W.2d at 100. Both the district court and the Missouri appellate court also found it significant that the victim's body was found in the "pipe line" area, *Weston*, 912 S.W.2d at 100, and that Mr. Weston's stalled car was in the same area. *See Weston*, No. 4:97CV794 at 7-8, and *Weston*, 912 S.W.2d at 98, 100.

Finally, the district court and the Missouri appellate court considered significant both the fact and the content of Mr. Weston's six accounts to the police of the relevant events. *See Weston*, No. 4:97CV794 at 2-3, 8, and *Weston*, 912 S.W.2d at 99-100. In five of those accounts Mr. Weston admitted being with the victim after they left the bar, and in three of those five accounts Mr. Weston acknowledged that he and the victim had engaged in a struggle. In one of those three accounts, Mr. Weston stated that he pushed the victim, that she fell over an embankment and hit her head, and that Mr. Weston then knew that she was dead. In addition, the testimony of the state prisoner was that Mr. Weston admitted beating the victim's head against a rock until he felt her go lifeless. We agree with the district court and the Missouri appellate court that the evidence in the trial was sufficient to allow a rational jury to conclude, beyond a reasonable doubt, that it was Mr. Weston, and not

anyone else, who caused the victim's death. *See Weston*, No. 4:97CV794 at 7, 9, and *Weston*, 912 S.W.2d at 100.

We may grant habeas relief with respect to a state court conviction only if the state courts' proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court ... or ... resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. § 2254(d). We see neither of these circumstance here and thus affirm the district court's holding that the evidence was constitutionally sufficient to sustain Mr. Weston's conviction for second-degree murder.

## III.

At some stage in the district court proceedings, Mr. Weston apparently pointed out that under Missouri law a criminal defendant's inculpatory statements may not be used against him or her (or even admitted into evidence) unless other evidence at trial tends to corroborate those inculpatory statements. *See State v. Fears*, 803 S.W.2d 605, 608 (Mo. 1991) (*en banc*). He then apparently asserted that any corroborating evidence at his trial was inadequate, that his inculpatory statements should not have been admitted into evidence at trial, and that, without those statements, the evidence was insufficient to link him to the murder.

Mr. Weston does not make that argument in his appellate brief to this court, even though the district court opinion discusses the issue, and therefore we do not consider it. In any event, a state trial court's evidentiary rulings that are based on state law do not implicate a criminal defendant's constitutional rights with respect to the sufficiency of the evidence and thus are not cognizable on habeas review. *See Loeblein*, 229 F.3d at 726-27.

## IV.

In pretrial proceedings, the state trial court granted Mr. Weston's motion to exclude evidence that he had taken a polygraph test. Nonetheless, a police officer testified that his first involvement in the case was at the time of Mr. Weston's polygraph test. Mr. Weston moved for a mistrial, arguing that the state prosecutor had violated the pretrial order, and the state trial court denied the motion. Mr. Weston argues that he was deprived of due process by the state trial court's refusal to declare a mistrial after the police officer's reference to the polygraph test. We disagree.

Whether evidence that is related to polygraph tests may be admitted in a state court trial is a matter of state law. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994), *cert. denied*, 514 U.S. 1026 (1995); *cf. Houston v. Lockhart*, 982 F.2d 1246, 1251, 1251 n.4 (8th Cir. 1993) (*en banc*). For purposes of habeas review under 28 U.S.C. § 2254, therefore, we consider only the question of whether the state trial court's ruling in Mr. Weston's case rendered his trial fundamentally unfair, *see Cacoperdo*, 37 F.3d at 510. We hold that it did not.

While it was clear from the police officer's statement that Mr. Weston did take a polygraph test, the officer made no reference to the test results. The prosecutor's question, moreover, dealt with when the police officer entered the case – an inquiry that sought no information about a polygraph test. In other words, we see no reason to believe that the mention of the polygraph test was anything but accidental and that it was anything but a surprise to the state prosecutor. We note in addition the state trial court's observation that the jury showed no apparent reaction to the officer's comment. Finally, we point out that Mr. Weston explicitly requested the state trial court *not* to give a limiting instruction to the jury. In light of all of these circumstances, we reject Mr. Weston's argument that the reference to the polygraph test rendered his trial fundamentally unfair.

That being so, we can discern in the state courts' proceedings neither a result that was contrary to clearly established federal law nor a result that involved an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). We see no evidence of a result, moreover, that was precipitated by an unreasonable determination of the facts by the state courts, *see* 28 U.S.C. § 2254(d)(2). We therefore affirm the district court's holding with respect to Mr. Weston's arguments relative to the mention of his polygraph test.

V.

For the reasons stated, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.