**STATE of Iowa, Appellee,**

v.

**William Maurice FLOYD, Appellant.**

**No. 89–862.**

Court of Appeals of Iowa.

Dec. 27, 1990.

Linda Del Gallo, Acting State Appellate Defender, and B. John Burns, Asst. State Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Mark Joel Zbieroski, Asst. Atty. Gen., E.A. Westfall, County Atty., and John P. Heithoff, Asst. County Atty., for appellee.

Heard by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

SCHLEGEL, Presiding Judge.

Defendant William Maurice Floyd appeals his convictions following a jury trial. Defendant was found guilty of two counts of assault without intent to inflict serious injury but causing bodily injury, a serious misdemeanor, violating Iowa Code section 708.2(2). We affirm and remand.

The incidents resulting in this prosecution occurred during the evening of August 15, 1988. Defendant had been participating in a four-on-four basketball game for the Council Bluffs YMCA recreational summer league championship. By all accounts, the half-court game was rough, though not necessarily dirty, and tempers were as hot as the action on the court. Play was very physical, and the fouls were hard; there was considerable "hacking" and a lot of shoving for rebounds. Each team was aggressive and sought to intimidate its opponent with deed and word.

The opposing team had not lost a game during the regular season and had beaten defendant's team twice. During the first half of play, passions were aroused when a member of defendant's team, Andre Brown, struck Scott Rogers, a member of the opposing team, in the face as Rogers attempted to inbound the basketball. Brown was ejected from the game but remained in the gymnasium to watch the game. The game score remained fairly even until the second half of play, when defendant's team pulled ahead by eight to ten points.

With three to five minutes left to play in the game and with his team lagging behind on the scoreboard, Rogers was aggressively guarding John Floyd, defendant's cousin. John Floyd was dribbling the basketball beyond the free-throw line when Rogers fouled him in an attempt to steal the ball. The foul was a "reach-in" type that caught John Floyd either in the face or on the arm. The referee stopped play to report Rogers' foul to the scorer. The ensuing events developed quickly.

With play still stopped, Rogers and John Floyd exchanged words. The evidence conflicts as to precisely what was said. It appears John Floyd told Rogers to stop fouling. According to John Floyd, who is black, Rogers, who is white, used a racial slur in response. John Floyd shoved Rogers, and the referee called a technical foul on John Floyd. As Rogers stepped back and raised his unclenched hands, John Floyd hit Rogers in the face with a fist, knocking Rogers to the floor. Michael Kenealy, Rogers' teammate, had attempted to intervene, but failed and pushed John Floyd away from the downed Rogers. Two or three members of defendant's team then attacked Kenealy, hitting him from behind in the head and ribs.

As these incidents unfolded, Gregg Barrier and John McHale (Rogers' teammates)

and defendant and the ejected player, Brown, were on the sidelines. They were not involved in the play immediately prior to happenings described above. Although the order of defendant's actions is not entirely clear, it is clear that defendant left his team's bench area after play had been stopped and punches had been thrown. Defendant then assaulted McHale and Gregg Barrier on the sidelines and Duane Barrier on the basketball court.

McHale, who was simply standing on the sidelines when disturbances began to occur on the court, suffered the worst from blows by defendant. Defendant hit McHale and knocked him to the floor. McHale suffered a concussion, severe hemorrhaging, and loss of brain tissue. He spent the next two days in intensive care. He has permanently lost the sense of smell, has some amnesia, and is at risk of epileptic seizures.

Leaving McHale unconscious on the floor and bleeding profusely, defendant attacked Gregg Barrier and Duane Barrier. Like McHale, Gregg Barrier was on the sidelines, but was returning from a water fountain. Gregg Barrier was able to cover up against defendant's punches to the back of his head and shoulders, and defendant did not seriously injure him.

Duane Barrier had been in the game when play had been halted. As Duane Barrier watched the incidents on the court, defendant approached and punched him in the side of the head. When Duane Barrier turned to see what had hit him, defendant hit him squarely on the nose. Duane Barrier suffered a severely deviated septum and required reconstructive surgery.

The record includes descriptions of various attacks by different members of defendant's team. These cowardly antics seem primarily to have involved John Floyd and Andre Brown. The disturbance lasted a few minutes and even spread to the YMCA staff offices, where members of defendant's team beat Rogers as he attempted to call an ambulance for McHale.

The State filed two charges of willful injury, *see* Iowa Code § 708.4 (1989) (class "C" felony), against defendant. He was convicted by a jury on two counts of the lesser included offense of assault causing bodily injury, *see* Iowa Code §§ 708.1(1), 708.2(2) (1989) (serious misdemeanor). The trial court sentenced defendant to serve the maximum sentence of one year, *see* Iowa Code § 903.1(1)(b) (1989), for each conviction, and to serve these terms consecutively, *see* Iowa Code § 901.8 (1989). Defendant appeals, arguing he falls within the assault exception for voluntary participants in sporting events, *see* Iowa Code § 708.1 (1989) (last unnumbered paragraph). He further appeals, arguing that the trial court abused its discretion in sentencing him to consecutive maximum terms.

This is a case of first impression in this State, and one of a handful of reported criminal prosecutions for sports-related violence in North America. In *People v. Freer*, 86 Misc.2d 280, 281–84, 381 N.Y.S.2d 976, 977–79 (Dist.Ct.1976), an amateur football player was convicted of third degree assault. After a tackle and pileup, the defendant got up on one knee and punched the supine complainant in the eye. A similar prosecution against a professional hockey player in Minnesota ended in a mistrial. *State v. Forbes*, No. 63280 (Minn. 4th Dist. Aug. 12, 1975).

Section 708.1(1) defines an "assault" as occurring when, without justification, a person carries out

> [a]ny act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with apparent ability to execute the act.

The last, unnumbered paragraph of section 708.1, however, provides

> that where the person doing any of the above enumerated acts, and such other person, are voluntary participants in a sport, social or other activity, not in itself criminal, and such act is a reasonably foreseeable incident of such sport or activity, and does not create an unreasonable risk of serious injury or breach of peace, the act shall not be an assault.

We are bound to give statutes reasonable interpretations based on what the legisla-

ture has said, Iowa R.App.P. 14(f)(13), and we seek only a common sense understanding of circumstances to which this statute may apply. If there is an ambiguity in the statute, we resort to statutory construction. *Metier v. Cooper Transport Co., Inc.*, 378 N.W.2d 907, 912 (Iowa 1985). We may consider the language used in the statute, the objects sought to be accomplished, the evils and mischief sought to be remedied, and place a reasonable construction on the statute which will best effectuate its purpose rather than defeat it. *Id.* We must examine both the language used and the purpose for which the legislation was enacted and consider all parts together without giving undue importance to one single or isolated portion. *Id.* The commentators have argued that the legislature intended "to accommodate the assault law to reality, in that many acts which our society considers to be quite acceptable, and even desirable, are technically assaults by whatever rational definition that term may be given." J. Yeager & R. Carlson, *Iowa Practice: Criminal Law and Procedure* § 176 (1979).

█  We do not attempt an empirical definition of when persons are "voluntary participants in a sport." It is unnecessary for us to engage in such an exercise in this case. We have no doubt that defendant and his victims had been participants. Given that play had officially ceased,[1] that an altercation had broken out, and that defendant and some of his victims had been on the sidelines and not engaged in play activities, it is clear that defendant and his victims were not, at that time, "voluntary participants in a sport." There simply is no nexus between defendant's acts and playing the game of basketball.

We reject defendant's suggestion that he is protected from prosecution for acts committed by him while he is on a playing surface until the final buzzer, gun, whistle, goal, or out. In carving out this exception, the legislature clearly contemplated a person who commits acts during the course of play, and the exception seeks to protect those whose acts otherwise subject to prosecution are committed in furtherance of the object of the sport. In addition, we recognize that there are difficult questions of to how much violence a "voluntary participant" consents, but because of our ruling, we need not address this issue.

We further reject defendant's contentions that our construction of the exception to the assault statute will either ruin competitive sporting or flood the courts with these cases. On the contrary, our decision does not mandate that all, or for that matter any, cases like this be prosecuted, and it certainly does not attempt to place in jeopardy all who commit acts otherwise subject to prosecution when play is supposed to have ceased. We are confident that in closer cases the inquiry necessarily will shift, and the reasonable foreseeability of the incident and the so-called "consent" defense will separate the cases with merit from those without. As ever, we must rely on sound prosecutorial discretion[2] or await legislative action.

---

1. As discussed in Note, *Sports Violence as Criminal Assault: Development of the Doctrine by Canadian Courts*, 1986 Duke L.J. 1030, the Canadian courts have generally recognized that incidents that occur after cessation of play, as after a whistle blown for the express purpose of so signaling, are not part of the game. *Id.* at 1048–50 (citing *Re Duchesneau*, [1979] 7 C.R.3d 70, 83 (Que. Youth Trib.1978)). The Canadian courts have also recognized that such a bright-line rule, which is attractive because of its ease of application, cannot be blindly used without some evaluation of the circumstances. *Id.* (citing *Regina v. Leyte*, 13 C.C.C.2d 458, 459 (Ont. Prov.Ct.1973)).

2. Several law review commentators have urged prosecutors to use criminal sanctions to curb the perceived rise in sports violence. *See* Comment, *Controlling Sports Violence: Too Late for the Carrots—Bring on the Big Stick*, 74 Iowa L.Rev. 681, 682–83, 701, 705–08 (1989); *see also* Note, *Sports Violence as Criminal Assault: Development of the Doctrine by Canadian Courts*, 1986 Duke L.J. 1030, 1033, 1038–48; Comment, *It's Not How You Play the Game, It's Whether You Win or Lose: The Need for Criminal Sanctions to Curb Violence in Professional Sports*, 12 Hamline L.Rev. 71, 88 (1988); Comment, *Consent in Criminal Law: Violence in Sports*, 75 Mich.L.Rev. 148, 174 (1976). The paucity of sports violence cases could well be construed as showing that statutory exception and prosecutorial discretion combination serves as an adequate filter of sports-related cases.

■ Had we concluded that defendant and his victims were sports participants when these events occurred, we are not disposed toward finding that defendant's acts were "reasonably foreseeable incident[s]" of basketball. We need not go into detail in deciding what, if any, contact is "incident" to basketball. We are aware that in the heat of play in basketball one might, depending on the circumstances, expect a certain amount of pushing and shoving for position, the occasional elbow, and a fair number of open-handed slaps. It strains the imagination and contorts the concept of foreseeability beyond recognition to assert that the brutal assaults carried out by defendant in this case could have been "reasonably foreseeable incident[s]." [3] When they walk onto the court or stand on the sidelines, average reasonable basketball players are unprotected and unprepared for suddenly being set upon from the side or rear with a flurry of punches to the head. Moreover, that violence in fact occurs during a sporting event such as basketball, as defendant notes at length, and perhaps occurs more often when participants already are in physical contact with each other, does not necessarily make it a reasonably foreseeable incident. The legislature recognized this in enacting this exception, and a jury of defendant's peers agreed.

■ Even had we found defendant's acts reasonably foreseeable incidents to participants in basketball games, we conclude that they may "create an unreasonable risk of serious injury or breach of peace." The legislature wisely saw that there is a limit to the level of violence which we, as a

society, will, or perhaps should, tolerate in the pursuit of sport.[4] Defendant's acts reached and surpassed that level.

We noted above our belief that an average reasonable basketball player is unprotected and unprepared for fist fights, and we think this is particularly so under the circumstances described above. The legislature obviously did not intend to protect a basketball player who, regardless of his status as "participant," launches random attacks from the sidelines on other players. At least for the game of basketball, such acts "create an unreasonable risk of serious injury or breach of peace." The facts—the permanent injuries sustained by two of defendant's victims—and the manner in which these injuries were inflicted support our assessment.

We hold that Iowa Code section 708.1(1) does apply to defendant William Floyd. We further hold that the exception stated in the last, unnumbered paragraph of section 708.1 is not applicable to defendant. Defendant was therefore properly tried for assault under section 708.1.

■ To the extent defendant's inarticulate statement of the issues in this case challenges the sufficiency of the evidence to convict him of assault without intent to inflict serious bodily injury, we disagree. Our standard of review is well settled. A verdict will be upheld where there is substantial evidence to support the charge. *State v. LeGear*, 346 N.W.2d 21, 23 (Iowa 1984). "Substantial evidence" means such evidence as could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt.

---

3. While there may be a continuum, or sliding scale, grounded in the circumstances under which voluntary participants engage in sport (*e.g.,* professional or amateur) which governs the type of incidents in which an individual volunteers (*i.e.,* consents) to participate, it seems clear that such distinctions have no application here because of the stoppage of play. *See* Note, *Sports Violence as Criminal Assault: Development of the Doctrine by Canadian Courts,* 1986 Duke L.J. 1030, 1053 (citing *Regina v. St. Croix,* 47 C.C.C.2d 122 (Ont.Co.Ct.1979), and *Re Duchesneau,* [1979] 7 C.R.3d 70, 84 (Que.Youth Trib.1978)).

4. The law review commentators are unanimous in their disapprobation of sports-related violence and the effect it has on society. *See* Note, *Sports Violence as Criminal Assault: Development of the Doctrine by Canadian Courts,* 1986 Duke L.J. 1030, 1030–31, 1054; Comment, *It's Not How You Play the Game, It's Whether You Win or Lose: The Need for Criminal Sanctions to Curb Violence in Professional Sports,* 12 Hamline L.Rev. 71, 88–89 (1988); Comment, *Controlling Sports Violence: Too Late for the Carrots— Bring on the Big Stick,* 74 Iowa L.Rev. 681, 683–90 (1989); Comment, *Consent in Criminal Law: Violence in Sports,* 75 Mich.L.Rev. 148, 174 (1976).

*Id.* The evidence is viewed in the light most favorable to the State, including any legitimate inferences and presumptions which may fairly and reasonably be deduced from the record. *State v. Bass*, 349 N.W.2d 498, 500 (Iowa 1984). Nevertheless, we consider all the evidence at trial, not just the evidence that supports the verdict. *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980). It is clear from various eye-witness accounts, including some of the victims, that defendant carried out the acts punishable under sections 708.1 and 708.2. There can be no doubt concerning the sufficiency of the evidence.

■ In his statement of the facts, defendant raises the ugly specters of racism and inappropriate motives in prosecution. The team opposing defendant's was comprised of white professionals, including lawyers from a respected Council Bluffs law firm. Defendant and three of his teammates are African–Americans. We make mention of these allegations only to note that they are not properly before this court. We will not tolerate such insidious behavior, but neither can we entertain bald and unsupported assertions. It is well settled that we will not address questions not presented to the trial court and that new theories may not be presented on appeal. *See Shill v. The Careage Corp.*, 353 N.W.2d 416, 420 (Iowa 1984). If defendant has stated any legal theory, which does not appear to be the case, we think he has waived the issue for failing to cite any authority whatsoever. *See* Iowa R.App.P. 14(a)(3). Our examination of the testimony, moreover, reveals that these allegations simply do not comport with the record.

■ Pursuant to Iowa Code section 903.1(1)(b) the trial court sentenced defendant to serve the maximum sentence of one year for each conviction of assault without intent to commit serious injury. The court further ordered defendant to serve these terms consecutively. Iowa Code § 901.8 (1989). Defendant contends that the trial court committed an abuse of discretion in ordering this sentence.

In cases in which the trial court has discretion as to the sentence to be imposed, "[t]he court shall state on the record its reason for selecting the particular sentence." Iowa R.Crim.P. 22(3)(d). The court is obligated under Iowa Code section 901.5 to determine which authorized sentence "or which combination of them, in the discretion of the court, will provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant."

The supreme court, however, has indicated that "[a] sentence will not be upset on appellate review unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure such as trial court consideration of impermissible factors." *State v. Wright*, 340 N.W.2d 590, 592 (Iowa 1983). Likewise, "so long as the sentence is within the statutory maximum we will not reverse absent an abuse of discretion." *State v. Buck*, 275 N.W.2d 194, 195 (Iowa 1979) (quoting *State v. Grgurich*, 253 N.W.2d 605, 606 (Iowa 1977)). Defendant must, therefore, show that the "discretion was exercised on grounds clearly untenable or to an extent clearly unreasonable." *Id.* (citing *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976)).

Even if we apply a presumption of regularity, *see State v. Pappas*, 337 N.W.2d 490, 494 (Iowa 1983), as the State now urges, we are left with the unsettling statements made by the sentencing court concerning the extent of defendant's assault on McHale. At the sentencing hearing, the court said to defendant, "[T]he record is very clear ... that after [McHale] was on the floor, from a blow from you, he was kicked and assaulted by you...:" These facts, however, are not supported by the record. While mentioning kicking may seem trivial, it tends to show that the trial court improperly considered a mens rea for which defendant was not convicted. Although charged with willful injury, which has an element of specific intent to cause serious injury to another, *see* Iowa Code § 708.4 (1989), defendant was convicted of assault without intent to inflict a serious injury, *see* Iowa Code § 708.2(2) (1989).

We conclude that the sentencing court may have considered improper factors and, therefore, committed an abuse of discretion. As the Iowa Supreme Court has pointed out many times, we are not in a position to speculate about the weight which the court gave this factor. We must, therefore, set aside the sentence and remand for resentencing. *See State v. Black*, 324 N.W.2d 313, 316 (Iowa 1982) (citing *State v. Messer*, 306 N.W.2d 731, 732–33 (Iowa 1981)).

AFFIRMED AND REMANDED.