STATE of Missouri, Plaintiff/Respondent,

v.

Ronald E. GEORGE, Defendant/Appellant.

Ronald E. GEORGE, Movant/Appellant,

v.

STATE of Missouri, Respondent/Respondent.

Nos. 67883, 69985.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 12, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 1997.

Application to Transfer Denied Feb. 25, 1997.

Ellen H. Flottman, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Cheryl A. Caponegro, Assistant Attorney General, Jefferson City, for respondent.

REINHARD, Judge.

Defendant appeals after he was convicted by a jury of one count of second degree assault, § 565.060, RSMo 1994, and one count of third degree assault, § 565.070, RSMo 1994. The court found defendant to be a prior offender and sentenced him to a prison term of five years for assault in the second degree and a concurrent prison term of one year for assault in the third degree. Defendant also appeals the denial, without an evidentiary hearing, of his Rule 29.15 motion for post-conviction relief. We affirm.

The evidence reveals that on December 2, 1993, defendant was a patient at the psychiatric intensive care unit at St. Anthony's Hospital in South St. Louis County. About mid-day defendant became angry, agitated, and upset. He demanded medication, yelled, and paced the floor. Karen Zoeller, a nurse, tried to calm him down by talking with him. Another nurse gave defendant Librium, a tranquilizer, to decrease his agitation, but defendant did not respond to the medication.

After several hours had passed, defendant's behavior became more violent and threatening. Hospital security was notified. When Dusty Barnes and Mary Ann Erger, security personnel within the hospital, responded to the call, defendant was moving up and down the hallway saying that "somebody was going to get hurt." Defendant picked up

an oak bench and said that he would strike or kill anyone that came close to him.

Numerous staff members attempted to calm defendant down. His behavior, however, continued to escalate, and he became more angry and upset. When he screamed that he wanted a light for his cigarette, Barnes approached defendant and offered him a light. As defendant leaned forward, Barnes dropped his lighter and brought defendant to the floor.

Defendant punched Barnes in the eye, and the other staff members kept defendant on the floor. Defendant screamed that Barnes had suckered him and that he was going to kill Barnes. Defendant stated that he was happy he had punched Barnes. Barnes left the area briefly to check his injury and discovered a small, bleeding cut under his eye.

While Erger was helping to control and hold down defendant, he bit her leg through her trousers. After defendant was restrained, Erger received treatment for her injury. The wound was cleaned, and she received a tetanus shot. A quarter-sized piece of skin had to be placed back on her leg. Erger's leg became swollen and bruised. The bite later became infected, and she had to have an incision to remove a hematoma. Erger was able to work only part-time for approximately two months. She testified that she suffers from discomfort and that her leg is disfigured.

■ Defendant's sole point on direct appeal alleges that the trial court "erred in denying defense counsel the opportunity to use consent as a defense under Section 565.080, because this ruling deprived [defendant] of his rights to present a defense ... in that the physical injuries inflicted by [defendant] and [defendant's] conduct were reasonably foreseeable risks to security guards Barnes and Erger." [1]

Section 565.080, RSMo 1986, provides:

1. When conduct is charged to constitute an offense because it causes or threatens physical injury, consent to that conduct

---

1. The trial court faced the issue of consent as a defense when the state filed a motion in limine to prohibit defendant from adducing evidence of similar incidents. From the discussion in chambers, discovery had revealed "previous assaults or assaultive type behavior that's happened at the hospital earlier." The court sustained the state's motion and no specific offer of proof was made.

or to the infliction of the injury is a defense only if:

(1) The physical injury consented to or threatened by the conduct is not serious physical injury; or

(2) The conduct and the harm are reasonably foreseeable hazards of

(a) The victim's occupation or profession; or

(b) Joint participation in a lawful athletic contest or competitive sport; or

(3) The consent establishes a justification for the conduct under chapter 563 of this code.

2. The defendant shall have the burden of injecting the issue of consent.[2]

■ Apparently no Missouri cases have cited this statute. However, "in limited circumstances, consent is a 'defense' to any degree of assault." *State v. Dunlap*, 639 S.W.2d 201, 206 (Mo.App. E.D.1982); *See also* Notes on Use 5 and 6 to MAI–CR 3d 319.02. According to § 556.061, RSMo Supp. 1993, consent may be either expressed or implied. *See also* MAI–CR 3d 333.00.

Defendant urges that because of the nature of the guards' job, they consented to assaultive behavior. The state, however, argues that the security officers did not consent to defendant's conduct, and although they may have consented to "minor physical injuries which arise out of ordinary interactions" by virtue of their occupation, defendant exceeded the scope of any such consent.

When the Missouri legislature adopted a version of the Model Penal Code, it included a provision that was not in the model code. *Cf.* MODEL PENAL CODE § 2.11 (1962) *with* § 565.080, RSMo 1986.[3] Our research reveals that few states, which adopted statutes similar to the Model Penal Code, have included a provision setting forth consent as a

defense by nature of one's occupation. *See e.g.*, ME.REV.STAT.ANN. tit. 17–A, § 109 (West 1995); N.D.CENT.CODE § 12.1–17–08 (1995); TEX. PENAL CODE ANN. § 22.06 (West 1996). The only case cited to us interpreting such a statute is *Tanksley v. State*, 656 S.W.2d 194 (Tex.Ct.App.1983).

In deciding to disallow evidence supporting the defendant's consent defense, the trial court in this case relied upon W.E. Shipley, Annotation, *Consent as Defense to Charge of Criminal Assault and Battery*, 58 A.L.R.3d 662 (1974). This annotation provides that when considering consent as a defense in battery or assault cases without sexual overtones, other jurisdictions "have usually taken the view that since the offense in question involved a breach of the public peace as well as an invasion of the victim's physical security, the victim's consent would not be recognized as a defense...." *Id.*

This annotation also cites a Maryland case, which stands for the proposition that "[a] criminal assault which tends to bring about a breach of the public peace is treated as a crime against the public generally, and therefore the consent of the victim is no defense." *Taylor v. State*, 214 Md. 156, 133 A.2d 414, 415 (1957) (finding assault with attempt to commit sodomy against juvenile is crime against public generally, and victim's consent is no defense).

The trial court in this case also relied upon § 10.13 of THE NEW MISSOURI CRIMINAL CODE: A MANUAL FOR COURT RELATED PERSONNEL (n.d.). This manual discusses § 565.080 and provides "if the injury is a reasonably foreseeable hazard of the victim's employment he may be deemed to consent to the risk of injury by accepting the employment. An example would be military or police training exercises."

2. This statute was adopted in 1977 and became effective on January 1, 1979. The Comment to the 1973 proposed code provides:

Because some physical injuries are not criminal if consented to, a section dealing with consent is needed. This section allows consent as a defense if the physical injury is not serious. Where serious physical injury is involved consent as a defense is limited to the situations covered by subsections 1(2) and (3). The·ma-

jor area under the justification sections will be medical treatment where serious physical injury can lawfully be consented to.
MO.ANN.STAT. § 565.080 (Vernon 1979).

3. Section 2.11 of the Model Penal Code provides that the victim's consent is a defense. Unlike the Missouri statute, however, the Model Penal Code does not have a section setting out consent as a defense in the context of a victim's occupation.

In *Tanksley v. State, supra,* an imprisoned defendant called a jailer to the holding cell window. *Tanksley,* 656 S.W.2d at 195. The defendant, while holding a sharpened toothbrush handle, stated that he would stab the jailer in the eye when the holding cell door was opened. *Id.* The defendant was convicted of aggravated assault. At trial, the jailer admitted that "inmates are sometimes belligerent, that while he was rarely threatened, he had been insulted 'verbally' and abused a few times while working in the jail." *Id.*

On appeal, the defendant argued that "by the nature of the jailer's employment he consented . . . to any assault as a risk of his occupation, within the meaning of Tex.Pen. Code Ann. § 22.06(2)(A) (1974)." *Id.*[4] The court found that the provisions of the Texas Code "do not *define* effective consent to mean engaging in an occupation having a risk of assault." *Id.* at 197. Although a "victim's express or apparent assent to an accused's conduct is effective as a defense *if* the victim knew that such conduct was a risk of his occupation," the court found the jailer did not assent to the defendant's conduct. *Id.*

In the case at hand, defendant relies upon the literal reading of § 565.080 to support his contention that he was entitled to the consent defense. Defendant admits in his brief, however, there are no Missouri cases on point. Therefore, he relies upon two cases from other jurisdictions involving the issue of assumption of risk. *See Burrows v. Hawaiian Trust Company,* 49 Haw. 351, 417 P.2d 816 (1966); *Mullen v. Bruce,* 168 Cal.App.2d 494, 335 P.2d 945 (1959). We do not find either case to be persuasive. Assumption of risk cases are civil matters involving money damages, an award of which will benefit the victim. These matters differ from criminal cases, which involve not only the defendant and the victim, but also the public.

**4.** Section 22.06 of the Texas Penal Code provides:

The victim's effective consent . . . to the actor's conduct is a defense to prosecution under Section 22.01 (Assault) [or] 22.02 (Aggravated Assault) . . . if:

\* \* \* \* \* \*

(2) the victim knew the conduct was a risk of:

■ For example, in *State v. Fransua,* 85 N.M. 173, 510 P.2d 106 (App.1973), defendant and victim were in a bar drinking heavily. After an argument, defendant stated that if he had a gun, he would shoot victim. *Id.* 510 P.2d at 107. The victim then brought defendant a gun and told him "if he wanted to shoot me to go ahead." *Id.* Defendant shot victim, and at trial, defendant argued that victim consented to the shooting. *Id.* The court disagreed. The New Mexico court found:

> It is generally conceded that a state enacts criminal statutes making certain violent acts crimes for at least two reasons: One reason is to protect the persons of its citizens; the second, however, is to prevent a breach of the public peace. While we entertain little sympathy for either the victim's absurd actions or the defendant's equally unjustified act of pulling the trigger, we will not permit the defense of consent to be raised in such cases. . . . [T]he public has a stronger and overriding interest in preventing and prohibiting acts such as these.

*Id.* (citations omitted). The overriding concern for public protection makes consent ineffective as a defense in certain cases.

After examining the trial court's analysis, we conclude it did not err in denying defendant the use of consent as a defense.

An intentional assault which occurs while working as a hospital guard differs from participating in military or police training exercises. In the latter example, an individual has consented to reasonably foreseeable injuries that may occur. In this case, however, there was no evidence that the security officers consented to the assault. Defendant said he was glad he had punched Barnes in the face, and then he bit Erger. This was an intentional assault.

(A) his occupation.

■ By enacting the consent statute, the legislature did not intend to legalize intentional criminal assaults on persons engaged in the security profession. Rather, the legislature intended to "accommodate the assault law to reality, in that many acts which our society considers to be quite acceptable, and even desirable, are technically assaults by whatever rational definition that term may be given." *State v. Floyd,* 466 N.W.2d 919, 922 (Iowa.Ct.App.1990) (*quoting* J. Yeager & R. Carlson, *Iowa Practice: Criminal Law and Procedure* § 176 (1979)).

For instance, in *State v. Floyd, supra,* a fight erupted during an aggressive basketball game. *Id.* at 920–21. The court discussed the issue of consent to an assault occurring during a sporting event and found that the legislature "contemplated a person who commits acts during the course of play, and the exception seeks to protect those whose acts otherwise subject to prosecution are committed in furtherance of the object of the sport." *Id.* at 922. The court found at the time of the altercation, defendant and his victims were not "voluntary participants in a sport." *Id.* The court added, however, that even if the defendant and his victims were sport participants, "[i]t strains the imagination and contorts the concept of foreseeability beyond recognition to assert that the brutal assaults carried out by defendant ... could have been 'reasonably foreseeable incident[s].'" *Id.* at 923.

■ In the present case, it would be illogical to condone defendant's intentional assault of two guards simply because of the victims' profession. The consent statute was intended to protect acceptable acts committed during employment that would otherwise be subject to prosecution but which are committed in furtherance of one's employment. Authorizing a person to assault a worker who attempts to calm a person's abusive or disruptive behavior would not further the statute's intention. Rather, allowing the consent statute to legalize intentional assaults would thwart the purpose of Missouri's statutes criminalizing assaultive behavior.

■ In addition, Missouri's legislature has expressed a position against assaulting public servants who enforce the law. These statutes specifically protect correctional center employees and law enforcement officers. *See* §§ 217.385, 565.081, 565.082, 565.083, RSMo Supp.1993. Just as the consent statute would not be a valid defense to assaulting a police officer or correctional center employee, it cannot be a defense under the circumstances of this case.

■ Furthermore, in judging the validity of the statute, "we must be guided by 'robust common sense'." *Caesar's Health Club v. St. Louis County,* 565 S.W.2d 783, 789 (Mo.App. E.D.1978). Common sense suggests that while the statute's terms insinuate consent is a defense to foreseeable and intentional assaults occurring within the victim's occupation, the statute cannot reasonably be construed to provide a defense to such conduct. *Id.* We can infer that a security guard at a hospital or other business who is aware of previous assaults against his or her co-workers does not consent to future assaults against him or her. Without such an inference, it is foreseeable that convenience store workers, service station attendants, or bank tellers, who are working where previous assaults have occurred, would be assaulted, and the assailant would go unpunished for such behavior. We do not think the legislature intended the consent defense to encompass such situations.

We conclude that the trial court did not err.

■ In defendant's second point on appeal, he alleges:

> The motion court clearly erred in denying [defendant's] Rule 29.15 motion without granting an evidentiary hearing pursuant to Rule 29.15(g), because [defendant's] motion pleaded factual allegations which, if proved, would warrant relief and which are not refuted by the record, in that [defendant] claimed he was denied his right to effective assistance of counsel ... when trial counsel refused to allow [defendant] to testify in his own behalf.

The motion court found that an evidentiary hearing was not necessary because defendant failed to set forth any factual allegations warranting relief in his motion for post-conviction relief. The motion court further found defendant's "allegation that the trial

counsel misguided him by advising him not to testify is without merit and [is] refuted by the record." The motion court noted that defendant did not provide the proposed content of his testimony or to show how such testimony would have caused the jury to acquit him.

Our review is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15; *Brummell v. State,* 770 S.W.2d 379, 380 (Mo.App. E.D.1989). Such findings and conclusions will be found clearly erroneous only if a review of the entire record leaves this court with a definite and firm impression that a mistake has been made. *Id.* To be entitled to an evidentiary hearing, a movant must cite facts not conclusions, which, if true, would warrant relief; the factual allegations must not be refuted by the record; and the matters complained of must have prejudiced the movant. *State v. Blankenship,* 830 S.W.2d 1, 16 (Mo. banc 1992).

To prevail on a claim of ineffective assistance of counsel, a movant must show, by a preponderance of the evidence, that counsel's performance was deficient and that the deficient performance prejudiced movant's defense. *State v. Henderson,* 826 S.W.2d 371, 377 (Mo.App. E.D.1992) (*citing Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). To prove deficient performance, a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *Henderson,* 826 S.W.2d at 378. Prejudice is shown when there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Id.* If a movant fails to show either deficient performance or prejudice, the court need not address the other component. *State v. Mueller,* 872 S.W.2d 559, 566 (Mo.App. E.D.1994).

Furthermore, an attorney's advice regarding whether or not a defendant should testify is a matter of trial strategy. *State v. Williams,* 853 S.W.2d 371, 377–78 (Mo.App. E.D.1993). "Barring exceptional circumstances, such a claim is not a ground for relief." *Id.* at 378.

Defendant's claim is refuted by the record. After the state rested, defendant's attorney stated that "the defendant no longer wants to testify." At the sentencing hearing, the following discussion took place:

[Court]: Did [your attorney] present the case the way you wanted her to present it as far as investigating it and presenting your defense?

[Defendant]: I feel she done what she felt was necessary. I don't—I think that I should have took the stand because there was only one side of the story told. I mean, it's—

[Court]: I recall back in the trial that that was a concern that you and your attorney had about whether you should testify or not. And at that time I guess she convinced you that you shouldn't testify. Is that basically what happened?

[Defendant]: Yeah

[Court]: ... But the case as far as you biting the lady, that's pretty clear-cut.

[Defendant]: Yeah

[Court]: Even if you had testified, it would have been very difficult for the jury to not convict you either way. So that was really sort of a trial strategy-type thing that your attorney talked to you about.

[Defendant]: Yeah

[Court]: Other than that, is there anything else you wanted her to do that she didn't do?

[Defendant]: No. No.

[Court]: All right. So are you satisfied with her services?

[Defendant]: Yeah.

According to defendant, trial counsel did not refuse to let him testify but rather advised him not to testify as a matter of trial strategy. Therefore, defendant's second point is refuted by the record.

Moreover, defendant's post-conviction motion did not allege sufficient facts entitling him to relief. By not including the content of his proposed testimony, movant did not show how he was prejudiced by his attorney's alleged refusal to present his testimony. The motion court's denial of defendant's post-conviction motion without an evidentiary hearing was not clearly erroneous.

Defendant's third point on appeal alleges that:

The motion court clearly erred in denying [defendant's] Rule 29.15 motion because

postconviction counsel rendered ineffective assistance of counsel ... in that postconviction counsel failed to act as a reasonably competent attorney when she failed to sufficiently allege facts and grounds for post-conviction relief by grossly misstating the facts of appellant's case and the issues at trial in the amended motion.

Although defendant alleges that his post-conviction counsel grossly misstated the facts and issues of his case, defendant concedes that the post-conviction counsel filed a timely, verified amended motion.

 Allegations regarding ineffective assistance of post-conviction counsel are categorically unreviewable. *State v. Ervin*, 835 S.W.2d 905, 928–29 (Mo.1992), *cert. denied*, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993); *State v. Feltrop*, 803 S.W.2d 1, 19 (Mo.), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). Therefore, defendant's point must fail.

Judgment affirmed.

DOWD, P.J., and GARY M. GAERTNER, J., concur.