# IN THE COURT OF APPEALS OF IOWA

No. 21-0516
Filed April 13, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BRICE SHRIMPTON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Carroll County, Adria Kester (trial) and Gina Badding (sentencing), Judges.

Brice Shrimpton appeals from his conviction of second-degree burglary claiming insufficient evidence and that the court considered an improper factor in sentencing him. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, and Lucee Laursen, Student Intern, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Considered by Bower, C.J., Schumacher, J., and Doyle, S.J.* Badding, J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**DOYLE, Senior Judge.**

Brice Shrimpton appeals his conviction and sentence after a jury found him guilty of second-degree burglary.  On appeal, Shrimpton argues the State failed to present sufficient evidence that he had the specific intent to commit an assault when he kicked in the door to his girlfriend's home.  He also argues the court considered an improper factor in sentencing him.  Finding sufficient evidence to support the verdict and no error in sentencing, we affirm the district court.

In December 2020, Shrimpton and Stevie Gaines were in a relationship and living together.  She was about two to two-and-one-half months pregnant with their child.  On December 11, Gaines obtained a protective order against Shrimpton and was given exclusive possession of the rental house they were sharing.  Shrimpton was served with the order on the same day but did not leave the house.  The next day a police officer stopped by and told Shrimpton he needed to comply with the order and leave the home.  Shrimpton testified the police officer and Gaines agreed that he could keep his clothes in the backyard shed.  He stored his stuff in the shed and left the premises.

At about 9:00 p.m. on December 13, Shrimpton showed up at the house to get some work clothes.  Gaines was in the house with a friend, Nicholas Pickering.  She had called Pickering to come over because she was scared.   Shrimpton headed towards the shed and claims that on his way past the house he observed Pickering in the basement bedroom "laying in my bed wearing my clothes, actually, with a meth pipe and a torch next to him."   Shrimpton told Gaines he wanted Pickering gone.  He told Pickering through a broken basement window to "get the

fuck out of my house now." Shrimpton went to work and was "pissed off the entire time."

During the early morning hours of December 14, after finishing his work shift, Shrimpton returned to the home to get a change of clothes. Shrimpton's version of the events goes like this: He went to the back door, looked down the stairway, and observed Pickering's foot. Finding the door locked, he went to a basement window and observed Pickering and Gaines in bed smoking meth. He broke out two basement windows and told Pickering, "Get your drugs and get the fuck out of my house." Shrimpton returned to the back door and kicked it in. Pickering was halfway up the stairs when Shrimpton yelled, "I even opened the door for you, now get the fuck out." By this time, police were approaching the house, and Shrimpton took off.

Gaines gave a different version of events. She claims that when Shrimpton started breaking the basement windows, she ran upstairs, hid in a bedroom, and called police. Meanwhile, Shrimpton broke through the back door and entered the house. Gaines heard Shrimpton in the living room or dining room, outside the bedroom door. She heard Shrimpton threaten Pickering's life—"Are you ready to die, motherfucker?" By this time, police arrived on the scene. Gaines denied that she or Pickering were using drugs.

Pickering's version is substantially similar to that of Gaines. Pickering was awakened by the sound of breaking glass, went upstairs, and saw Shrimpton at the front door. Pickering went to unlock the front door, but Shrimpton went to the back door and kicked it in. When that happened, Pickering entered a first-floor bedroom with Gaines and her two children. He then went out into the living

room/dining room area and met Shrimpton. They were about ten feet apart when Shrimpton said, "Are you ready to die, motherfucker?" Pickering said it looked like Shrimpton had "something in his hand," but he did not identify it as a gun, knife, club, or crowbar. He felt threatened although Shrimpton never "came at him." Shrimpton then left as police were arriving. Pickering also denied any drug use.

The State charged Shrimpton with committing second-degree burglary in violation of Iowa Code sections 713.1 and 713.5 (2019). A jury found him guilty as charged. The district court sentenced Shrimpton to prison for a period not to exceed ten years. Shrimpton appeals, claiming there is insufficient evidence to support the conviction because of lack of evidence about his intent to commit an assault. He also claims the court considered an improper factor in sentencing him.

The State argues Shrimpton failed to preserve error on his claim of insufficient evidence because he failed to challenge the evidence regarding his intent to commit assault when moving for judgment of acquittal and the district court never addressed the issue in denying the motion. Whether the motion was sufficient under prior jurisprudence matters not. Now, "[a] defendant's trial and the imposition of sentence following a guilty verdict are sufficient to preserve error with respect to any challenge to the sufficiency of the evidence raised on direct appeal." *State v. Crawford*, ___ N.W.2d ___, ___, 2022 WL 815299, at *9 (Iowa 2022). So we have the authority to review Shrimpton's challenge to the sufficiency of the evidence.

"Sufficiency-of-evidence claims are reviewed for correction of errors at law, and we will uphold a verdict if substantial evidence supports it." *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017). "Evidence is substantial if, when viewed in the

light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (internal quotation marks and citation omitted). All evidence is considered, not just the evidence supporting the verdict. *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017). "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010) (quoting *Raper v. State*, 688 N.W.2d 29, 36 (Iowa 2004)). "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury is free to reject certain evidence, and credit other evidence." *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (cleaned up). In considering a sufficiency-of-the-evidence challenge, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the [factfinder]." *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)).

The State bears the burden of proving every element of a charged offense. *State v. Armstrong*, 787 N.W.2d 472, 475 (Iowa Ct. App. 2010). Shrimpton does not challenge the marshalling instructions employed at trial for the charged crime. Thus, the instructions serve as the law of the case for reviewing the sufficiency of the evidence. *See State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018). The jury was instructed the State needed to prove that Shrimpton broke or entered "into a residence," that "was an occupied structure," without permission, that "was

not open to the public," "with the specific intent to commit an assault," and while someone was present. Shrimpton challenges only the intent element, arguing the State failed to establish he had specific intent to commit an assault.

"Specific intent is seldom capable of direct proof." *State v. Walker,* 574 N.W.2d 280, 289 (Iowa 1998). Intent may be established by circumstantial evidence. *See State v. Casady*, 491 N.W.2d, 782, 787 (Iowa 1992) (stating intent may be established by circumstantial evidence and by inferences reasonably drawn from the conduct of the defendant and all attendant circumstances in the light of human behavior and experience).

We also recognize the jury was free to believe or disbelieve the testimony of the witnesses and to give as much weight to the evidence as, in its judgment, such evidence should receive. *State v. Thornton,* 498 N.W.2d 670, 673 (Iowa 1993). The very function of the jury is to sort out the evidence and place credibility where it belongs. *Id.*

According to Gaines, when Shrimpton showed up at the house at around 9:00 p.m. on December 13, Shrimpton told her that he would be back "if I didn't have my friend out of the house. He came around, threatened him through the window, and then by the time the police had gotten there, he was gone." Shrimpton confirmed that he spoke to Pickering through the broken basement window, telling Pickering, "Hey, you need to grab your drugs and you need to get the fuck out of my house now." Shrimpton then went to work "pissed off the entire time." Pickering testified that although he did not hear the remark, Shrimpton told Gaines "that he was going to get a gun and shoot me and he'll be back."

When Shrimpton returned to the home in the early morning hours of December 14, he broke out basement windows and told Pickering "Get your drugs and get the fuck out of my house. I already told you earlier tonight. Now, get the fuck out." He then kicked in the back door and told Pickering, "There you go, motherfucker, I opened the door for you, now get the fuck out." Although Shrimpton denies entry to the home, he admitted that "if I would have entered, there would have been contact." Both Gaines and Pickering testified Shrimpton entered the house and confronted Pickering saying, "Are you ready to die, motherfucker?" Viewing the evidence in a light most favorable to the State and the verdict, as we must, we find the evidence was sufficient to convince a rational jury that Shrimpton had the specific intent to commit an assault when he broke into the home.

Shrimpton claims the court considered an improper factor when imposing his sentence. He asks us to vacate his sentence and remand for a new sentencing hearing. In explaining its sentencing decision, the sentencing court stated:

> I've considered all the sentencing options provided for in Chapter 901 and 907 of the Iowa Code. My judgment relative to sentence today is based on that which I believe will provide the maximum opportunity for your rehabilitation, while at the same time protecting the community from further offenses by you or others similarly situated to you. In selecting this sentence, I've considered your age, your education, your prior criminal history, including the fact that this offense was committed while you were on probation already. I have considered your employment, your family circumstances, the nature of the offense committed and the harm to the victims, the facts upon which the charge was based, the use of force in the commission of the offense, the need to protect the community, the State's recommendation, as well as your attorneys recommendation. The recommendations of the pre-sentence investigation. *I've also considered your statements here today, particularly the lack of remorse that you've expressed and the lack of responsibility for your actions, not just in this case but in the prior criminal convictions*

*you've had.* I've considered your character, propensities, needs and potential for rehabilitation, the need for what I see that is structure in your life. I've considered the need to deter you and others similarly situated to you from committing offenses of this nature. I've considered your substance abuse history and other permissible factors supported by the record. I've not considered any uncharged crimes or acts of violence or pending criminal charges that may have been referred to.

(Emphasis added.) Shrimpton focuses on the emphasized text, arguing "the court's reliance on Shrimpton's perceived lack of remorse for his prior offenses is not a proper consideration for a sentencing court."

> We review a sentence imposed in a criminal case for correction of errors at law. We afford sentencing judges a significant amount of latitude because of the discretionary nature of judging and the source of the respect afforded by the appellate process. When the sentencing decision falls within the statutory limits, it is cloaked with a strong presumption in its favor. Nevertheless, resentencing of the defendant is necessary if the sentencing court used an improper consideration, even if it was merely a secondary consideration.

*State v. Fetner*, 959 N.W.2d 129, 133-34 (Iowa 2021) (cleaned up). And we do not speculate about how much weight the court gave to the improper factor as there is no way to determine what sentence would have been ordered without consideration of the improper factor. *State v. Carrillo*, 597 N.W.2d 497, 501 (Iowa 1999).

"[A] defendant's lack of remorse is highly pertinent to evaluating his need for rehabilitation and his likelihood of reoffending." *State v. Knight,* 701 N.W.2d 83, 88 (Iowa 2005). So a sentencing court may consider a defendant's lack of remorse in choosing a sentence that will provide for the defendant's rehabilitation and protect the public from further offenses by the defendant. *Id.* at 89. Shrimpton recognizes that but contends lack of remorse for his prior offenses is not a proper consideration for a sentencing court. He cites no authority for the proposition.

Appellants are required to cite authority supporting arguments on appeal, and failure to do so may result in waiver of an issue. Iowa R. App. P. 6.903(2)(g)(3). In any event, Shrimpton asserts "the sentencing court in this case did not have access to the information necessary to determine whether Shrimpton's remorse or acceptance of responsibility was appropriate or sufficient, and its consideration of Shrimpton's lack of remorse was improper." Not so.

To be sure, the absence of facts to support a factor on which a court states it relied in its sentencing decision renders such factor improper and constitutes an abuse of discretion. *See, e.g.*, *Formaro*, 638 N.W.2d at 725-26; *State v. Floyd*, 466 N.W.2d 919, 924–25 (Iowa Ct. App. 1990). That is not the case here. As Shrimpton answered questions about his criminal history during the sentencing hearing—when his memory did not fail him—he justified his behavior with many excuses suggesting he was not at fault or culpable. A reasonable person could have concluded a lack of remorse on Shrimpton's part for prior offenses. The sentencing court's comment about lack of remorse for prior offenses responded to Shrimpton's statements made at the hearing. The court's consideration of Shrimpton's lack of remorse for prior offenses is not grounds for vacation of the sentence.

**AFFIRMED.**